[No. B184025. Second Dist., Div. Eight. May 21, 2007.]

DAVID PROKOP, Plaintiff and Appellant, v.
CITY OF LOS ANGELES, Defendant and Respondent.

COUNSEL

Nemecek & Cole, Jonathan B. Cole, Matthew F. Blumkin; Karen K. Coffin Professional Corporation and Karen K. Coffin-Brent for Plaintiff and Appellant.

Rockard J. Delgadillo, City Attorney, and Blithe S. Bock, Deputy City Attorney, for Defendant and Respondent.

OPINION

BOLAND, J. —

## SUMMARY

The City of Los Angeles has absolute immunity under Government Code section 831.4 from liability for injuries suffered by a bicyclist who collided with a chain link fence immediately after exiting a class I bikeway located along the Los Angeles River.

## FACTUAL, LEGAL AND PROCEDURAL BACKGROUND

David Prokop sued the City of Los Angeles, seeking damages for injuries he suffered while bicycling along a bikeway, designed by the city, which runs along the south side of the Los Angeles River between Riverside Drive and Los Feliz Boulevard. He alleged that, while bicycling along the bike path, east of Victory Boulevard in Griffith Park, he sought to exit the path at its end through an opening provided for bicyclists. When he attempted to cycle through the opening, ignoring the message painted on the pavement that stated "WALK BIKE," he collided with a chain link fence, causing a severe laceration to his forehead, loss of consciousness and neck pain. He claimed bicyclists have to curve sharply several times in order to exit the path and avoid the fence, which he asserted is placed too close to the bike path. Prokop alleged that his injuries were the result of a dangerous condition created by the city, about which the city knew or should have known, and that the city was negligent in failing to protect him against the injuries.

The city sought summary judgment asserting, among other defenses, that it is immunized from liability under Government Code section 831.4 (section 831.4). Section 831.4 provides that public entities are not liable for injuries caused by a condition of any unpaved road that provides access to, among other activities, "riding, including animal and all types of vehicular riding," and of "[a]ny trail used for" those purposes. (Gov. Code, § 831.4, subds. (a) & (b).) Section 831.4 has been interpreted, in a series of cases, to apply to bike paths, both paved and unpaved, to trails providing access to recreational activities, and to trails on which the activities take place. (E.g., *Carroll v. County of Los Angeles* (1997) 60 Cal.App.4th 606, 609–610 [70 Cal.Rptr.2d 504] (*Carroll*) [paved bicycle path is a trail under § 831.4, subd. (b); immunity under subd. (b) is not limited to access trails, but extends to a trail whose use is the object of the recreational activity (citing cases)].) In opposition to the motion, Prokop argued the bicycle path was a "Class I bikeway[]" under Streets and Highways Code section 890.4. The city was

required to conform to "Chapter 1000 of the California Highway Design Manual, entitled Bikeway Planning and Design which it did not do." Therefore, the city was not immune from liability.

The trial court granted summary judgment in favor of the city, concluding the matter was controlled by *Farnham v. City of Los Angeles* (1998) 68 Cal.App.4th 1097 [80. Cal.Rptr.2d .720] (*Farnham*), which held that a class I bikeway, as .defined in Streets and Highways Code section 890.4, is a trail within the definition of section 831.4, subdivision (b). (*Farnham, supra,* at pp. 1099, 1101.) An order granting summary judgment was entered, and Prokop filed a timely appeal.

## DISCUSSION

Prokop argues *Farnham* was wrongly decided, and the city had a mandatory duty to utilize minimum safety design criteria on the bikeway. Further, Prokop contends that even if *Farnham* correctly concluded the class I bikeway in that case was a trail giving rise to absolute immunity, the trial court erred in finding the bikeway in this case was a trail. And finally, even if the bikeway is a trail, Prokop contends his accident occurred outside the confines of the trail and therefore no immunity exists. Prokop's arguments are without merit.

We begin with section 831.4. It provides, in pertinent part:

"A public entity . . . is not liable for an injury caused by a condition of:

"(a) Any unpaved road which provides access to fishing, hunting, camping, hiking, riding, including animal and all types of vehicular riding, water sports, recreational or scenic areas and which is not a (1) city street or highway or (2) county, state or federal highway or (3) public street or highway . . . . .

"(b) Any trail used for the above purposes."[1]

Prokop contends the absolute immunity conferred by section 831.4, subdivision (b), does not apply, and instead Government Code section 815.6 (section 815.6) applies. Section 815.6 provides that: "Where a public entity is

---

[1] Section 831.4, subdivision (c) provides that a public entity is not liable for an injury caused by a condition of "[a]ny paved trail, walkway, path, or sidewalk on an easement of way which has been granted to a public entity, which easement provides access to any unimproved property, so long as such public entity shall reasonably attempt to provide adequate warnings of the existence of any condition of the paved trail, walkway, path, or sidewalk which constitutes a hazard to health or safety. . . ."

under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." Prokop claims the city has a "mandatory duty" under the California Bicycle Transportation Act (specifically, Sts. & Hy. Code, § 891) to "utilize all minimum safety design criteria and uniform specifications and symbols for signs, markers, and traffic control devices established pursuant to Sections 890.6 and 890.8."[2] (Sts. & Hy. Code, § 891.) Because the city did not comply with a "mandatory duty" to construct the bikeway in accordance with the Highway Design Manual, the city is liable for Prokop's injuries.[3] Prokop's analysis, which would render section 831.4 meaningless, is mistaken, as is apparent from both the text of the statutory provisions governing the liability of public entities and a long line of case authority applying section 831.4.

First, the statutory provisions on governmental immunities and liabilities make it apparent that section 831.4 gives the city absolute immunity from injuries caused by the condition of any trail described in section 831.4. Prokop's suggestion that section 815.6 somehow "takes precedence" is mistaken. The Government Code clearly states, in section 815, subdivision (a), that, "[e]xcept as otherwise provided by statute," a public entity is not liable for an injury, whether it arises out of an act or omission of the entity, a public employee or anyone else. While section 815.6 (liability based on failure to discharge a statutory duty) and Government Code section

---

[2] Sections 890.6 and 890.8 of the Streets and Highways Code require the California Department of Transportation, in cooperation with city and county governments, to "establish minimum safety design criteria for the planning and construction of bikeways and roadways where bicycle travel is permitted" (Sts. & Hy. Code, § 890.6), and to "establish uniform specifications and symbols for signs, markers, and traffic control devices to designate bikeways, regulate traffic, improve safety and convenience for bicyclists, and alert pedestrians and motorists of the presence of bicyclists on bikeways and on roadways where bicycle travel is permitted." (Sts. & Hy. Code, § 890.8.)

[3] A declaration from Prokop's expert witness, John Forester, states that the bicycle gate where Prokop's injury occurred does not comply with chapter 1000 of the California Highway Design Manual. According to Forester, chapter 1000 is entitled "Bikeway Planning and Design," and includes design criteria for class I bikeways, including minimum widths, minimum clearances to obstructions, and minimum design speeds, with which the bikeway in question does not comply. Prokop did not present the trial court with a copy of the Highway Design Manual, relying only on Forester's descriptions of various provisions of the manual. The Highway Design Manual available on the Department of Transportation's Web site states in its foreword that the manual establishes uniform policies and procedures to carry out the highway design functions of the department, and that "[i]t is neither intended as, nor does it establish, a legal standard for these functions," and that "[i]t is not intended that any standard of conduct or duty toward the public shall be created or imposed by the publication of the manual." (Highway Design Manual (Sept. 1, 2006) <http://www.dot.ca.gov/hq/oppd/hdm/pdf/english/fwd.pdf> [as of May 21, 2007].)

835 (liability based on dangerous condition of property) both expressly provide for liability of the public entity, section 815, subdivision (b), further specifically states that: "The liability of a public entity established by this part (commencing with Section 814) is subject to any immunity of the public entity provided by statute, including this part . . . ." ■ Accordingly, no conclusion is possible except that section 831.4 gives the city absolute immunity from injuries caused by the condition of the bikeway on which Prokop was injured, if the bikeway is a trail within the meaning of section 831.4.[4]

■ Second, case precedents have established that a paved class I bikeway is a "trail" within the meaning of section 831.4, and we reject Prokop's contention these cases were wrongly decided. In chronological order, the applicable precedents developed as follows:

■ —In *Giannuzzi v. State of California* (1993) 17 Cal.App.4th 462 [21 Cal.Rptr.2d 335] (*Giannuzzi*), the court interpreted section 831.4 in the context of a motorcyclist's claim for injuries suffered while riding his motorcycle in a vehicular recreation park. The state had allegedly left dirt pilings directly in the path of an established trail, resulting in a dangerous condition of the property within the meaning of Government Code section

---

[4] Prokop seeks to avoid this conclusion, citing several cases for the proposition that immunities granted under other provisions of the Government Code do not allow a governmental entity to avoid liability for failure to discharge a mandatory duty under section 815.6. Those cases have no applicability to Prokop's case. For example, *Slagle Constr. Co. v. County of Contra Costa* (1977) 67 Cal.App.3d 559, 562 [136 Cal.Rptr. 748], stated that "given a mandatory duty, the liability imposed by Government Code section 815.6 . . . takes precedence over the immunity provisions of Government Code section 818.4 . . . ." Section 818.4, however, gives public entities immunity for injuries caused by issuance or refusal to issue permits, licenses or similar authorizations "where the public entity . . . is authorized by enactment to determine whether or not such authorization should be issued . . . ." As *Slagle* points out, the immunity granted by section 818.4 attaches to discretionary licensing activities only, not to mandatory decisions or nondiscretionary, ministerial acts involved in the licensing or permit process. (*Slagle, supra,* 67 Cal.App.3d at pp. 562–563.) Similarly, in *Walt Rankin & Associates, Inc. v. City of Murrieta* (2000) 84 Cal.App.4th 605 [101 Cal.Rptr.2d 48], the court observed that the immunities granted under Government Code sections 818.4 and 818.2 (the latter gives public entities immunity for injuries caused by adopting or failing to adopt an enactment, or failing to enforce a law) "were intended to confer immunity only in connection with discretionary activities, and not in connection with mandatory duties that cannot be ignored." (*Walt Rankin, supra,* 84 Cal.App.4th at pp. 628–629 [finding no statutory basis for granting the city immunity from its failure to discharge mandatory duties relating to payment bonds].) Neither *Slagle* nor *Walt Rankin* may be read to suggest that section 815.6 "takes precedence" over the trail immunity provided in section 831.4. (See *Astenius v. State of California* (2005) 126 Cal.App.4th 472, 476 [23 Cal.Rptr.3d 877] (*Astenius*) [even if provisions of the Pub. Resources Code created a mandatory duty, any breach of the duty is within the scope of § 831.4 immunity].)

835.[5] After examining the legislative history of section 831.4, the court concluded that subdivision (a) precluded liability for injuries caused by the condition of unpaved roads providing access to the listed recreational activities; subdivision (b) precluded liability for injuries caused by the condition of trails used for those activities; and subdivision (c) precluded liability for injuries caused by the condition of any paved trail located on an easement of way providing access to unimproved property. (*Giannuzzi, supra,* at pp. 466–467.) ■ Because plaintiff's purpose in the park was the recreational driving of his vehicle, "the application of section 831.4 is established as a matter of law," and "[w]hether the complaint otherwise states a cause of action for dangerous condition liability is made immaterial by this conclusion." (*Id.* at p. 467.)

■ —In *Armenio v. County of San Mateo* (1994) 28 Cal.App.4th 413 [33 Cal.Rptr.2d 631] (*Armenio*), the plaintiff was injured while riding his bicycle in a scenic park along a surfaced trail, allegedly because of a dangerous condition created by improper patching of the trail. The court rejected the claim that section 831.4 immunity applied only to roads or trails providing access to recreational activities, and not to trails on which the activity takes place. (*Armenio, supra,* at p. 417.) The court also rejected plaintiff's claim that immunity does not extend to paved trails. (*Id.* at p. 418 [unlike § 831.4, subd. (a), which refers to "unpaved" roads, and subd. (c), which refers to "paved" trails, subd. (b) refers to "[a]ny" trail; the logical inference is that the nature of the trail's surface is irrelevant to questions of immunity].)[6] The court also observed that the "plainly stated purpose of immunity for recreational activities on public land is to encourage public entities to open their property for public recreational use . . . ."[7] (*Armenio, supra,* at p. 417.)

---

[5] Government Code section 835, on which Prokop also relies, states: "Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either: [¶] (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or [¶] (b) The public entity had actual or constructive notice of the dangerous condition . . . a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

[6] *Armenio* also rejected the argument that section 831.4, subdivision (c), referring to paved trails, would be superfluous if section 831.4, subdivision (b) immunity applied to both paved and unpaved trails. *Armenio* pointed out that subdivision (c) "is not concerned with property that public entities own in fee, but with easements granted to public entities specifically to provide access to unimproved property." (*Armenio, supra,* 28 Cal.App.4th at p. 418.)

[7] The court continued: " '[T]he burden and expense of putting such property in a safe condition and the expense of defending claims for injuries would probably cause many public entities to close such areas to public use.' " (*Armenio, supra,* 28 Cal.App.4th at p. 417, quoting Legis. Com. com., 32 West's Ann. Gov. Code (1980 ed.) foll. § 831.2, p. 293.)

■ —In *State of California v. Superior Court* (1995) 32 Cal.App.4th 325 [39 Cal.Rptr.2d 1], plaintiff could not recover for injuries sustained when she fell off a horse on a trail in a state park. The court held plaintiff could not, as a matter of law, establish that the trail was in a dangerous or defective condition because the state is absolutely immune from liability for injuries caused by a physical defect of a trail. (*Id.* at pp. 326, 328, 329 ["state cannot be liable for a dangerous condition of public property when it enjoys absolute immunity for one necessary component of the liability equation"].)

■ —In *Carroll, supra,* 60 Cal.App.4th 606, the court held that a paved bicycle path qualifies as a "trail" under the immunity provisions of section 831.4. (*Carroll, supra,* at pp. 607, 608, 609, citing *Armenio, supra,* 28 Cal.App.4th 413 [plaintiff injured while rollerblading on the South Bay Bicycle Path along the coast from Santa Monica through Redondo Beach could not recover for injuries suffered when her left rear wheel struck a crack; terms "trail" and "path" are synonymous, and "[f]urther, under the express terms of subdivision (b), *any* trail is included in the exemption"].)

■ —In *Farnham, supra,* 68 Cal.App.4th 1097, the court rejected the contention that section 831.4 did not apply to injuries the plaintiff incurred while bicycling on the Sepulveda Basin Bikeway, a paved "class I bikeway as defined by Streets and Highways Code section 890.4, subdivision (a)" that runs along the perimeter of Balboa Park.[8] (*Farnham, supra,* at p. 1099.) In *Farnham,* the plaintiff contended that the bikeway was part of the public streets and highways, and therefore did not qualify as a "trail" under section 831.4, subdivision (b). Among plaintiff's arguments was the observation—repeated here by Prokop—that Streets and Highways Code section 890 et seq. established a bicycle transportation system, including construction design requirements, and the court observed that Street and Highways Code sections 890.6, 890.8, 891 and other sections provide for design and safety regulations. (*Farnham, supra,* at pp. 1100–1101 & fn. 4.) *Farnham* rejected the claim: "Regardless of the fact that a bicycle path may come under the broad brush of being part of the streets and highway system in general, a class I bikeway does not qualify as a street or highway. . . . [A] street or highway is open to the public for vehicular travel. [Citations.] A bicycle is not considered a vehicle. [Citations.] A class I bikeway, by definition, is not open to vehicular traffic. Thus, the Bikeway, as a class I bikeway, does not qualify as a street or highway. . . . The Legislature did not exempt from immunity any trails that might be part of the street and highway system in general. As in *Carroll,* we conclude that a class I bikeway is a 'trail' within the definition of

---

[8] Streets and Highways Code section 890.4 defines a "bikeway" as "all facilities that provide primarily for bicycle travel." It defines class I bikeways, "such as a 'bike path,'" as providing "a completely separated right-of-way designated for the exclusive use of bicycles and pedestrians with crossflows by motorists minimized." (Sts. & Hy. Code, § 890.4, subd. (a).)

section 831.4, subdivision (b)." (*Farnham, supra,* at p. 1101.) *Farnham* also reviewed the legislative history of section 831.4, and rejected the assertion that the Legislature did not intend section 831.4 immunity to apply to a paved trail. (*Farnham, supra,* at pp. 1101–1102 ["[t]he Legislature could have easily chosen to make subdivision (b)'s 'any trail' subject to the same warning requirements of subdivision (c) and opted not to do so"; *Armenio* has been the law since 1994, joined by *Carroll* in 1997; "[i]f the Legislature disagrees, it has but to amend section 831.4"].)[9]

■■■ We discern no basis for concluding, as Prokop argues, that *Farnham* was wrongly decided. Prokop argues the analysis in *Farnham* is "grossly inadequate," and that the "mandatory duties" imposed by the Streets and Highways Code (§ 890 et seq.) must be considered. We have already disposed of this argument: Government Code section 815, subdivision (b), clearly provides that the liability of a public entity established by "this part"—which includes the section 815.6 liability for failure to discharge a "mandatory duty" upon which Prokop relies—is "subject to any immunity of the public entity provided by statute . . . ." See also *Astenius, supra,* 126 Cal.App.4th at p. 476 [immunity granted by § 831.4 is absolute; the state's duty under Pub. Resources Code provisions to maintain trails does not affect its immunity under § 831.4; "[e]ven assuming those sections create a mandatory duty, any breach of that duty comes within the scope of the immunity provisions of section 831.4"].) Prokop's further arguments that the conclusions reached by *Farnham* and *Carroll* "run directly counter . . . to any reasonable statutory interpretation of Section 831.4" are equally lacking in cogency.

■■■ Prokop asserts that, even if *Farnham* is correct, his case is distinguishable for several reasons. First, he asserts his injury was caused by the design of the bicycle gate rather than the condition of the bikeway. No authority concludes that the "condition" of a trail excludes conditions relating to its design. Indeed, the contrary is the case. (*Amberger-Warren v. City of Piedmont* (2006) 143 Cal.App.4th 1074, 1084 [49 Cal.Rptr.3d 631] ["to fulfill

___

[9] The *Farnham* court conceded it is not unreasonable to argue that, when a governmental entity undertakes to improve or create a paved trail in an urban area, it should have the duty to reasonably maintain its condition or face tort liability. (*Farnham, supra,* 68 Cal.App.4th at pp. 1102–1103.) However: "[T]he flip side of appellant's position is the difficulty cities and counties might face in inspection and repair. Paved trails are subject to changing irregularity of surface conditions . . . . Additionally, the weather can cause dirt or sand to be blown on a trail, creating an unsafe surface for almost any user. . . . Bicycle paths (or bikeways) are not velodromes, and are not necessarily designed for a user to travel as fast as she or he can, although some people often do. In today's litigious society, it does not take a very large crystal ball to foresee the plethora of litigation cities or counties might face over bicycle paths, which are used daily by a variety of people . . . all going at different speeds. The actual cost of such litigation, or even the specter of it, might well cause cities or counties to reconsider allowing the operation of a bicycle path, which, after all, produces no revenue." (*Id.* at p. 1103.)

its purpose, trail immunity must extend to claims arising from the design of a trail, as well as its maintenance"]; see *State of California v. Superior Court, supra,* 32 Cal.App.4th at p. 328 [the state is absolutely immune from liability for injuries caused by a physical defect of a trail].) Prokop's further claim that trail immunity does not apply because his accident occurred outside the confines of the bikeway is likewise without merit. A gateway to or from a bike path is patently an integral part of the bike path. (*Amberger-Warren, supra,* 143 Cal.App.4th at p. 1085 [rejecting plaintiff's attempt to avoid city's immunity "by identifying the hill next to the trail, rather than the trail itself, as a dangerous condition"].)

Finally, Prokop asserts the city had a duty to warn under subdivision (c) of section 831.4, which grants only qualified immunity for injuries caused by a condition of a paved trail or path "on an easement of way which has been granted to a public entity, which easement provides access to any unimproved property . . . ." Prokop maintains that a factual question remains whether the bikeway along the Los Angeles River falls into this category, because the city has stated that the bike path was constructed "on a City of Los Angeles recreational easement." Prokop is mistaken again. A "recreational easement" is not the same thing as an "easement of way," which has been granted to a public entity to provide access to unimproved property. Subdivision (c) of section 831.4 concerns "easements over private property," and its exclusive emphasis " 'is, and has always been, access.' " (*Armenio, supra,* 28 Cal.App.4th at p. 417, quoting *Giannuzzi, supra,* 17 Cal.App.4th at p. 466.) The bikeway along the Los Angeles River is clearly not an easement of way for access to unimproved property. Indeed, Prokop's own expert testified that the bikeway "connects, at this time, only to three main boulevards: Victory (via Riverside), Los Feliz, and Fletcher . . . ." These boulevards are scarcely "unimproved property." (*Armenio, supra,* 28 Cal.App.4th at p. 418 [§ 831.4, subd. (c) is concerned "with easements granted to public entities specifically to provide access to unimproved property"].)

As we have seen, the courts of appeal have been unanimous in holding, since the *Armenio* case in 1994, that the nature of a trail's surface is irrelevant to questions of immunity. *Farnham* presented in some detail the policy considerations, both pro and con, underlying the propriety *vel non* of absolute immunity for paved trails in urban areas. The Supreme Court denied review of *Carroll* and *Farnham,* which concluded a class I bikeway was a trail within the meaning of the trail immunity statute. Nonetheless, litigants continue to challenge the applicability of absolute immunity to class I bikeways. Because of the legislative blending of paved bike paths (which are used principally for recreation) into the bicycle transportation system (which the Legislature established to achieve functional commuting needs), it may be appropriate for the Legislature to reexamine the trail immunity statute and its

application to class I bikeways in urban areas. Unless and until the Legislature decides otherwise, however, we conclude no basis exists to depart from established precedent.

## DISPOSITION

The judgment is affirmed. The City of Los Angeles is entitled to recover its costs on appeal.

Cooper, P. J., and Rubin, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 15, 2007, S153943.