Filed 11/29/23  Skelton v. City of Brentwood CA1/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| GLEN SKELTON,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>CITY OF BRENTWOOD,<br><br>        Defendant and Respondent. | A163442<br><br>(Contra Costa County<br>Super. Ct. No. MSC19-02225) |

Plaintiff Glen Skelton sued the City of Brentwood (City) after he fell from his bicycle while riding across metal grates covering a concrete drainage trench that runs between a bike path and a public park.  As Skelton crossed from the bike path to the park, the bike's front tire became trapped in a gap between two grates, propelling him over the handlebars.

Skelton appeals from a grant of summary judgment in the City's favor. The trial court held that his claims were barred because there was insufficient evidence that the City had notice of the alleged dangerous condition.  The court also held that his claims were independently barred by "trail immunity" under Government Code[1] section 831.4, which immunizes public entities for injuries "caused by a condition of" a trail used for

---

[1] All further statutory references are to the Government Code unless otherwise noted.

recreational purposes.  We conclude that summary judgment was unwarranted on either ground and therefore reverse.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

On February 6, 2019, Skelton was riding his bicycle on the Sage Glen Estates Trail, a 10-foot-wide, paved bike path that runs roughly north to south.[2]  Traveling next to him were his two dogs he routinely took to Sage Glen Park, a public park that includes a grassy area and a playground.  The park was opened to the public in the summer of 2007, and the bike path was officially opened the following May.

Looking south, the direction Skelton was riding before his accident, a dirt strip about two feet wide runs along the right side of the bike path.  Running along the right side of the dirt strip is the drainage trench, a concrete, V-shaped drainage channel about three and a half feet wide.  The park is directly west (on the right side) of the trench.  The trench is covered by metal grates held together with metal brackets.  The trench and metal grates "directly meet the edge of the grass play areas of [the park] along the entire east edge of the park," except for certain locations where a concrete walk extends from the park across both the trench and dirt strip to the bike path.

While riding his bike south on the bike path, Skelton turned at a shallow angle toward the park.  As his front tire traveled across the trench grates, and while his back tire was still on the dirt strip, the front tire went

_____

[2] The bike path is a "Class I [b]ikeway," meaning it "provide[s] a completely separated right-of-way designated for the exclusive use of bicycles and pedestrians with crossflows by motorists minimized."  (Sts. & Hy. Code, § 890.4, subd. (a).)

2

through a gap between two metal grates and became stuck.  As a result, Skelton was propelled over his bike's handlebars onto the park grass, sustaining unspecified physical injuries.

A week after the accident, Skelton returned to inspect the metal grates near the scene, and he took several photographs.  In his deposition, he testified that there was still a "giant gap" between the two grates where his front bicycle tire was caught, and one of the metal brackets was missing.  In a quarter-mile stretch of grates, he found that "[a]t least a dozen" brackets were damaged or missing.  For purposes of this appeal, it appears undisputed that the grates were improperly secured at the time of the accident, whether because the gap already existed when Skelton rode onto the grates or was caused by his tire.

Also about a week after the accident, on February 14, 2019, City staff inspected the metal grates.  They "noticed loose brackets, tightened those brackets, and stated they would 'continue to monitor the drainage system, including the grates.'"  The grates were again inspected on September 5 of that year.

A year later, in the fall of 2020, City workers cleaned out the drainage trench, requiring them to remove and then refasten the metal grates and brackets.  According to the City's records, however, the brackets were never repaired or replaced in the decade before Skelton's accident or afterward, through the end of 2020.  Nor were the metal grates inspected at any time between January 2014 and the accident.  The City had no record of any complaints about the grates prior to the accident.

In May 2021, Skelton returned to the scene of the accident and took several photographs.  He "noticed that several of the grates covering the

3

concrete spillway were not secure," some brackets were missing or loose, and at least one grate was "partially broken."

Skelton sued the City, alleging causes of action for premises liability, general negligence, and dangerous condition of property. The City moved for summary judgment on the bases that (1) there was no triable issue of material fact about whether it had actual or constructive notice of the dangerous condition and (2) trail immunity barred the suit. The trial court granted the motion on both grounds, and it entered judgment in the City's favor in August 2021.

II.
DISCUSSION

A. *General Legal Standards*

There is no common law tort liability for public entities in California. (*Nealy v. County of Orange* (2020) 54 Cal.App.5th 594, 601 (*Nealy*).) Instead, liability exists exclusively under the Government Claims Act (§ 810 et seq.) (the Act), " ' "a comprehensive statutory scheme that sets forth the liabilities and immunities of public entities and public employees for torts." ' " (*Nealy*, at p. 601.) Under the Act, "[a] public entity is generally liable for an injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury and the public entity had actual or constructive notice of the dangerous condition." (*Montenegro v. City of Bradbury* (2013) 215 Cal.App.4th 924, 929; §§ 835, 835.2.) At the same time, the Act immunizes public entities from liability for certain types of injuries, including those "caused by a condition of" a recreational trail. (§ 831.4, subd. (b); see generally § 830.4 et seq.)

Summary judgment is proper if "there is no triable issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) A defendant moving for summary

4

judgment must present evidence "that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to the cause of action." (*Id.*, § 437c, subd. (p)(2).) The burden then "shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to the cause of action or a defense thereto." (*Ibid.*) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850, fn. omitted (*Aguilar*).)

We review the record de novo and "decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law." (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348.) In doing so, we "liberally construe the evidence in favor of [the plaintiff], and resolve all doubts concerning the evidence in favor of the [plaintiff]." (*Ovando v. County of Los Angeles* (2008) 159 Cal.App.4th 42, 61.) As in any other appeal, when reviewing a grant of summary judgment we need not consider points or arguments a party did not raise below. (*Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 698–699 (*Meridian*).)

> B.    *The City Is Not Entitled to Summary Judgment Based on Its Lack of Constructive Notice of the Dangerous Condition.*

Skelton claims that he presented sufficient evidence to create a triable issue on whether the City had constructive notice of the condition of the metal grates. We agree.[3]

---

[3] As a result, we need not address whether the City also had actual notice of the metal grates' condition, as Skelton argues for the first time on appeal.

5

Section 835, the general statute under which a public entity may be held "liable for injury caused by a dangerous condition of its property," requires a plaintiff to prove either that the entity negligently or wrongfully "created" the condition or that the entity "had actual or constructive notice of the . . . condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."  (§ 835, subds. (a) & (b).)

In turn, section 835.2, subdivision (b), provides that "[a] public entity had constructive notice of a dangerous condition within the meaning of subdivision (b) of Section 835 only if the plaintiff establishes that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character."  The statute then identifies two types of evidence that are admissible on the issue of due care: "(1) Whether the existence of the condition and its dangerous character would have been discovered by an inspection system that was reasonably adequate" and "(2) Whether the public entity maintained and operated such an inspection system with due care and did not discover the condition."  (§ 835.2, subd. (b).)

Thus, under the Act, "[a] public entity will be charged with constructive notice of a dangerous condition only if (1) the dangerous condition existed for a sufficient period of time before the plaintiff's injury, and (2) [the condition] was sufficiently obvious that the entity acted negligently in not discovering and repairing it."  (*Martinez v. City of Beverly Hills* (2021) 71 Cal.App.5th 508, 514.)  Generally, the issues "whether a dangerous condition could have been discovered by [a] reasonable inspection and whether there was adequate

6

time for preventive measures are properly left to the jury." (*Carson v. Facilities Development Co.* (1984) 36 Cal.3d 830, 843.)

The trial court held that Skelton failed to present sufficient evidence that the dangerous condition existed "for such a period of time" that the City should have discovered it. In doing so, the court referred to case law it characterized as holding "that a plaintiff who cannot establish how long a dangerous condition existed" cannot prove constructive notice. It then rejected Skelton's argument that negligence could be inferred "because the City never had a system in place to periodically inspect the [trench] and metal grate[s] for dangerous conditions." The court acknowledged that under *Ortega v. Kmart Corp.* (2001) 26 Cal.4th 1200, 1203 (*Ortega*), a private party's failure to inspect its property within a reasonable period of time permits an inference that the dangerous condition existed long enough to establish constructive notice, but it concluded that *Ortega* does not apply to public entity defendants.

In evaluating the trial court's ruling, we begin by questioning whether the City met its initial burden of presenting evidence that Skelton could not establish the element of constructive notice. (See Code Civ. Proc., § 437, subd. (p)(2); *Swanson v. Morongo Unified School Dist.* (2014) 232 Cal.App.4th 954, 962.) Skelton does not directly raise this issue, but it is fundamental to the analysis. "[S]ummary judgment law in this state . . . require[s] a defendant . . . to present evidence, and not simply point out that the plaintiff does not possess, and cannot reasonably obtain, needed evidence." (*Aguilar*, *supra*, 25 Cal.4th at p. 854, fn. omitted.) Thus, if the defendant does not " 'present evidence sufficient to show [it] is entitled to judgment as a matter of law,' " then the burden never shifts to the plaintiff to present opposing evidence. (*Swanson*, at p. 962.)

7

In moving for summary judgment, the City presented little evidence, simply insisting there was "no evidence that [it] had actual or constructive notice of any dangerous condition." To support its motion, the City relied on only two facts, neither of which Skelton disputed: that its "Public Works officials and maintenance workers maintain that they were not aware and did not have any complaints that any part or portions of the metal grates were not adequately or properly secured," and that "Skelton testified that prior to the incident, he did not know if the metal grates were already in a separated condition before the front tire of his bicycle contacted them or if it was his turning movement that separated the grates."

This evidence was insufficient to establish that Skelton did not have, and could not obtain, evidence proving constructive notice. (See *Aguilar*, *supra*, 25 Cal.4th at p. 855.) Although the first fact regarding the City employees' lack of awareness supports the conclusion that the City did not have *actual* notice of the grates' dangerous condition, it proves little about the duration of that condition, particularly since there was apparently no inspection system in place. The second fact regarding Skelton's understanding about the grates' separation proves even less about the duration of the condition, since the claimed dangerous condition is that the grates were inadequately secured, not that there was necessarily a preexisting gap between them. Nor does either fact demonstrate that Skelton could not otherwise establish that the City had constructive notice of a problem with the grates based on other evidence.

Separately, we also question the trial court's statement that *Ortega* is inapplicable to public entity defendants, although Skelton again does not challenge the assertion. (See *Martinez v. City of Beverly Hills*, *supra*, 71 Cal.App.5th at p. 520 [citing *Ortega* for proposition that "constructive

8

notice of a defect may be imputed to a public entity that fails to have a 'reasonably adequate' inspection system"].) We are not convinced by the court's reasoning that since section 835.2, subdivision (b), provides that evidence about "an inspection system" is admissible on the issue of due care, such evidence is therefore immaterial to the issue of constructive notice "under the literal terms" of the statute. (See *Ruiz v. Musclewood Property Investments, LLC* (2018) 28 Cal.App.5th 15, 22 [courts cannot " 'insert words into a statute under the guise of interpretation' "].)

Nor do we agree with the treatise cited by the trial court, which states that *Ortega*'s failure-to-inspect inference "appears inconsistent with the [Act's] express requirement . . . that [a] plaintiff must establish that the dangerous condition existed for an adequate period of time before the accident." (California Government Tort Liability Practice (Cont.Ed.Bar 4th ed. 2014) § 12.50, p. 12-74.) Although "public entity liability is statutory in nature," the Act's provisions "are to be read against the background of general tort law." (*Peterson v. San Francisco Community College Dist.* (1984) 36 Cal.3d 799, 809.) Under general tort law, as under section 835.2, a plaintiff seeking recovery for a property's dangerous condition is required "to prove the owner had actual or constructive notice of the defect in sufficient time to correct it." (*Ortega, supra*, 26 Cal.4th at p. 1203.) Since these duration requirements are effectively the same, we do not see how *Ortega*'s failure-to-inspect inference necessarily conflicts with section 835.2's language. (Cf. *Brown v. Poway Unified Sch. Dist.* (1993) 4 Cal.4th 820, 836 [res ipsa loquitur doctrine conflicts with requirement under section 835, subdivision (a), that public entity's employee "created" dangerous condition].)

Ultimately, whether *Ortega* applies to public entities does not control here. Regardless of *Ortega*'s applicability, Skelton presented enough

9

evidence (other than the City's failure to inspect) to create a triable issue on whether the problem with the grates existed for such a duration that the City should have discovered it.  This evidence included Skelton's observation that several brackets were again loose or missing within months after the grates were secured following the trench's cleanout, suggesting that the grates' not being properly secured was a "recurring or continuous" condition, as opposed to a " 'transient' " one like a spill.  (*Lopez v. Superior Court* (1996) 45 Cal.App.4th 705, 716.)  A factfinder could reasonably infer that the condition existed long enough before the accident that the City should have discovered it.  Thus, the City was not entitled to judgment as a matter of law based on the element of constructive notice.

> C.     *Trail Immunity Does Not Bar this Suit as a Matter of Law.*

Skelton also claims that the trial court incorrectly held that trail immunity barred his suit.  Again, we agree, because triable issues of material fact must be resolved to decide the applicability of trail immunity.

> 1.     Trail immunity

Under section 831.4, the trail immunity statute, a public entity "is not liable for an injury caused by a condition of: [¶] (a) Any unpaved road which provides access to fishing, hunting, camping, hiking, riding, including animal and all types of vehicular riding, water sports, recreational or scenic areas and which is not a (1) city street or highway or (2) county, state or federal highway or (3) public street or highway of a . . . district formed for the improvement or building of public streets or highways. [¶] (b) Any trail used for the above purposes."  (§ 831.4; *Montenegro v. City of Bradbury, supra,* 215 Cal.App.4th at p. 929.)  Read together, subdivisions (a) and (b) attach immunity " 'to trails providing access to recreational activities as well as to trails on which those recreational activities take place.' "  (*Loeb v. County of*

*San Diego* (2019) 43 Cal.App.5th 421, 431.) " 'Whether a property is considered a "trail" under section 831.4 turns on "a number of considerations," including (1) the accepted definitions of the property, (2) the purpose for which the property is designed and used, and (3) the purpose of the immunity statute.' " (*Nealy*, *supra*, 54 Cal.App.5th at p. 603.)

The purpose of section 831.4 " ' " 'is to encourage public entities to open their property for public recreational use, because "the burden and expense of putting such property in a safe condition and the expense of defending claims for injuries would probably cause many public entities to close such areas to public use." ' " ' " (*Nealy*, *supra*, 54 Cal.App.5th at pp. 602–603.) Consistent with this purpose, trail immunity covers claims arising not just from a trail's physical condition but also its design and location, which are " ' "integral feature[s] of a trail." ' " (*Id.* at p. 603.) Also consistent with this purpose, the relevant focus is on whether a condition of the trail caused the injury, regardless of whether the injury was sustained while the plaintiff was on the trail. (Compare, e.g., *Toeppe v. City of San Diego* (2017) 13 Cal.App.5th 921, 924 (*Toeppe*) [no trail immunity where plaintiff hit by falling tree branch while walking on trail], with *Prokop v. City of Los Angeles* (2007) 150 Cal.App.4th 1332, 1335, 1341–1342 (*Prokop*) [trail immunity where plaintiff collided with chain link fence after exiting bike path].)

2.      The bike path and dirt strip both qualify as a "trail."

We begin by addressing, and rejecting, Skelton's appellate argument that section 831.4 does not apply to *paved* trails, contrary to well-settled case law. (*Prokop*, *supra*, 150 Cal.App.4th at pp. 1338–1341 [discussing cases]; *Armenio v. County of San Mateo* (1994) 28 Cal.App.4th 413, 418 ["the nature of the trail's surface is irrelevant to questions of immunity"].) Skelton did not raise this argument in the trial court, and we therefore deem it forfeited and

11

decline to reach its merits.  (See *Meridian*, *supra*, 67 Cal.App.5th at pp. 698–699.)

Putting aside this late-raised argument, it is undisputed that the bike path is a trail under section 831.4, subdivision (b).  In moving for summary judgment, the City argued that the dirt strip is part of the bike path, which Skelton disputed.  The trial court determined that the dirt strip qualified as a trail, whether because it is part of the bike path or a separate path.  (See *Amberger-Warren v. City of Piedmont* (2006) 143 Cal.App.4th 1074, 1079 (*Amberger-Warren*) ["path" is synonymous with "trail"].)

As the City points out, in his opening brief Skelton did not challenge the trial court's determination that the dirt strip is a "trail."  Because he raises such a challenge for the first time in his reply brief, his argument is forfeited.  (See *Nick v. City of Lake Forest* (2014) 232 Cal.App.4th 871, 879.)  Thus, we will assume the trial court correctly concluded that the dirt strip is a trail under section 831.4.

In its order, the trial court effectively found that the metal grates on the concrete trench did not themselves form a trail.  The City, however, now argues that the metal-grate-covered trench "runs *on* the dirt trail because where [it] . . . ends on either end, the dirt trail continues."  Not only did the City not raise this argument in moving for summary judgment, but the argument also directly contradicts the City's position below that the trail at issue "consist[s] of an asphalt and dirt portion" and that the trench and grates "run parallel along the entirety of the dirt path that [Skelton] was using as a trail."  Accordingly, the City's contention that the trench and metal grates are actually part of the trail's surface is forfeited.  (See *Meridian*, *supra*, 67 Cal.App.5th at pp. 698–699.)

12

Furthermore, even if the City's contention were not forfeited, we would disagree with it. It is readily apparent that the concrete trench does not run "on" the dirt strip. As for the metal grates, although they are basically flush with the dirt strip, they are "on" the trench, not the dirt. Moreover, photographs of both ends of the spillway show that while one end terminates in dirt similar to the dirt strip, the other terminates partially in dirt and partially in the park's grassy area. Finally, the City identifies no evidence suggesting that the metal grates are designed to be traveled for any appreciable length in the same direction as are the bike path and dirt strip. In short, we are not persuaded that the trench and grates are actually on a trail.

### 3. Triable issues exist as to whether the grate-covered trench is "a condition of" a trail.

We now turn to the key question, which is whether the metal grates covering the trench qualify as "a condition of" the bike path or the dirt strip under section 831.4. We conclude that there are triable issues of material fact on this issue.

In concluding that trail immunity applied, the trial court relied mostly on two decisions it found analogous to this case: *Amberger-Warren*, *supra*, 143 Cal.App.4th 1074, which this division decided, and *Arvizu v. City of Pasadena* (2018) 21 Cal.App.5th 760 (*Arvizu*), which the Second District Court of Appeal decided. We agree with Skelton that these decisions are distinguishable.

In *Amberger-Warren*, the plaintiff was on a paved pathway that ran across a hill in the off-leash area of a city dog park. (*Amberger-Warren*, *supra*, 143 Cal.App.4th at p. 1077.) As the plaintiff walked up the pathway to get her dog, she "slipped on some debris . . . and fell backward, landing 'part-way off' the pathway. To avoid going down the hill next to the pathway,

13

she grabbed an exposed cement edge as she fell, and injured her hand in the process." (*Id.* at pp. 1077–1078.)

In relevant part, we rejected the plaintiff's attempt "to avoid [trail] immunity by identifying the hill next to the trail, rather than the trail itself, as a dangerous condition." (*Amberger-Warren*, *supra*, 143 Cal.App.4th at p. 1085.) We explained that "this condition is not unrelated to the trail because the trail is what provides access to the hill and exposure to the alleged danger." (*Ibid.*) Thus, accepting the plaintiff's argument would require installing safety rails or relocating trails "whenever the surroundings could otherwise be considered unreasonably dangerous. The likely and unacceptable result, which the immunity was created to avoid, would be the closure of many trails in areas that could be deemed at all hazardous." (*Ibid.*)

Several years later, the Second District relied on *Amberger-Warren* in rejecting a plaintiff's position that a condition of a trail did not cause his injuries. (*Arvizu*, *supra*, 21 Cal.App.5th at pp. 767–769.) The *Arvizu* plaintiff went with friends at night to a city park that contained a recreational trail. (*Id.* at pp. 761–762.) To reach the trail, the group took a shortcut down a natural slope that had no pathway. (*Id.* at p. 765.) The plaintiff slipped as he descended, "lost his footing[,] and tumbled head over heels" to the bottom of the slope and across the trail. (*Ibid.*) On the other side of the trail was a 10-foot-high retaining wall, which the trail "proceed[ed] along the top of, and just behind." (*Ibid.*) Once he crossed the trail, the plaintiff "sailed over the retaining wall"—which did not have a guardrail—"and landed on the dirt and rocks below," sustaining severe injuries. (*Id.* at pp. 762, 765.)

*Arvizu* disagreed with the plaintiff that the alleged dangerous condition, "the lack of guardrails or warnings along the retaining wall[,] . . . had nothing to do with the trail's location and design." (*Arvizu*, *supra*,

14

21 Cal.App.5th at p. 767.)  The Second District explained that since "[v]ery little space separate[d] the edge of the trail and the top of the wall," any guardrails or warning signs "would therefore have to be placed along the trail.  For the reasons articulated in *Amberger-Warren*, the [defendant] is immune from claims that warnings or guardrails are required to protect against falls from the [t]rail over the concrete retaining wall, or that the [t]rail should be relocated to a safer location, because these claims concern the location and design of the trail." (*Id.* at pp. 768–769.)

Here, the trial court interpreted *Amberger-Warren* and *Arvizu* to establish that trail immunity applies if the trail " 'provides access to [the dangerous condition] and exposure to the alleged danger.' " (Quoting *Amberger-Warren*, *supra*, 143 Cal.App.4th at p. 1085, italics omitted.)  In those cases, however, the trail provided the *only* access to the dangerous condition, which was significant because it meant that to protect the public from the danger, either safety devices would have to be installed on the trail or the trail would have to be relocated.  (See *Arvizu*, *supra*, 21 Cal.App.5th at pp. 768–769; *Amberger-Warren*, at p. 1085.)  Here, the trench and metal grates are also accessible from the park, and if Skelton prevailed the City would not necessarily be required to install safety devices on the trail or relocate it.

Thus, this case is more analogous to *Toeppe*, in which the claimed dangerous condition was a negligently maintained eucalyptus tree in a public park.  (*Toeppe*, *supra*, 13 Cal.App.5th at p. 923.)  A branch from the tree fell on the plaintiff while she was using a trail that ran through the park.  The Fourth District Court of Appeal held that even assuming the plaintiff was actually on the trail when the branch hit her, trail immunity did not apply. (*Id.* at pp. 926–929.)  In reaching its holding, *Toeppe*, which predates *Arvizu*,

15

distinguished *Amberger-Warren* for two key reasons.  First, unlike the hillside in *Amberger-Warren*, the eucalyptus tree could injure a park visitor "whether [the visitor] used the trail or simply walked across the grass and was struck by a falling branch." (*Toeppe*, at p. 928.)  And second, unlike the *Amberger-Warren* plaintiff, the *Toeppe* plaintiff did not "allege[] that a safety barrier need[ed] to be added to the trail or that the trail must follow a different path." (*Toeppe,* at p. 929.)

The City argues that *Toeppe* is "distinguishable and inapplicable," because here the trail is the only reason that a person would be exposed to the claimed dangerous condition.  The City may be correct that a *trail* user will encounter the metal grates only "because of" the trail, similar to the relationship between the retaining wall and the trail in *Arvizu*.  But we cannot agree that the only reason a *park* user would encounter the metal grates is "in order to access the [trail]." (Italics omitted.)  It seems perfectly plausible to us that a person using the park's grassy area for recreation could go onto the metal grates, either purposely or inadvertently, without intending to reach the dirt strip or bike path.  Nor is there any evidence that the condition of the metal grates is dangerous only to bicyclists, not to people on foot.

The City also argues that "the metal[-]grate[-]covered [trench] is patently an integral part of the trail, would not exist but-for the trail, and therefore is a condition of the trial within the meaning of [s]ection 831.4."  Specifically, the City claims that the trench's purpose is "to provide drainage to prevent ponding/pooling of water on the trail."  These contentions, however, have not been factually established.  If it were true that the trench was built only to allow for drainage from the dirt strip, we might agree that the trench, and thus the metal grates covering it, qualify as "a condition of" a

16

trail under section 831.4, subdivision (b).  (See, e.g., *Nealy, supra,* 54 Cal.App.5th at pp. 604–605 [fence dividing trail "was 'inherently connected to' and existed 'only because of its connection with the trail' "]; *Prokop, supra,* 150 Cal.App.4th at p. 1342 ["[a] gateway to or from a bike path is patently an integral part of the bike path"].)  But the City identifies no evidence establishing that the trench was in fact built only to allow drainage from the dirt strip.  The City did not claim below that this was the trench's purpose, and the only supporting evidence the City cites on appeal consists of photographs of the bike path, dirt strip, and metal grates.  These photographs do not prove that the trench has an inherent connection to, and exists only because of its connection with, the trail.

Moreover, Skelton presented evidence that the trench was built and accessible to the public before the trail was.  According to the City's interrogatory responses, the park was first opened to the public in the summer of 2007, and the trail was "officially accepted and opened to the public" the following May.  The parties appear to agree that the trench was present when the park opened.  Although the City suggests the trail may have been publicly accessible before its official opening date, there are at least triable issues of fact involving the trench's relationship to the bike path and dirt strip.  As a result, the City was not entitled to summary judgment based on trail immunity.

## III.
### DISPOSITION

The judgment is reversed, and the matter is remanded for further proceedings consistent with this opinion.  Skelton is entitled to his costs on appeal.

17

_____

Humes, P.J.


WE CONCUR:



_____

Margulies, J.



_____

Getty, J.*




*Judge of the Superior Court of the County of Solano, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*Skelton v. City of Brentwood*  A163442