Filed 4/25/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ANA MARIA MONTENEGRO,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>CITY OF BRADBURY,<br><br>        Defendant and Respondent. | B242953<br>(Los Angeles County<br>Super. Ct. No. GC047340) |

APPEAL from an order of the Superior Court of Los Angeles, Jan A. Pluim, Judge.  Affirmed.

Verlato and Roberts and April A. Verlato for Plaintiff and Appellant.

Barber & Bauermeister and John C. Barber for Defendant and Respondent.

_____

Appellant Ana Maria Montenegro appeals the trial court's grant of summary judgment in favor of respondent City of Bradbury.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Montenegro allegedly sustained injuries after falling over a protruding tree trunk while walking along a pathway located beside Royal Oaks Drive North in Bradbury.  Montenegro brought suit against Bradbury for negligence, willful failure to warn of a dangerous condition, and dangerous condition of public property, claiming that the exposed tree root and inadequate lighting created a dangerous condition.

According to descriptions and depictions provided by the parties, the subject pathway is approximately one-half mile long and is located on a piece of land which runs between Bradbury and the neighboring City of Duarte.[1]  A white rail fence separates the two cities.  The pathway is approximately 7.5 feet wide.

Bradbury moved for summary judgment contending that the pathway was a "recreational trail" within the meaning of Government Code section 831.4, subdivision (a), which provides that public entities are not liable for injuries caused by the condition of trails used for certain recreational purposes, including "hiking" and "riding, including animal and all types of vehicular riding," or for access to such recreation.[2]  Bradbury presented evidence that the pathway, referred to as the "Bradbury Trail," was part of the "Royal Oaks Recreational Trail and Landscaping

---

[1]     Royal Oaks Drive North, which hooks off of and back on to Royal Oaks Drive in Duarte, surrounds the piece of land on three sides, the north, east and west.  Royal Oaks Drive in Duarte is its southern border.

[2]     Undesignated statutory references are to the Government Code.  Bradbury also contended that to the extent Montenegro claimed her injuries were due to a design defect, section 830.6 provided immunity.  In her opposition, Montenegro clarified that she was not asserting a claim for design defect.

Project," the purpose of which was to expand recreational opportunities for bicyclists, walkers, joggers and equestrians. According to the evidence submitted, the area at issue was improved between 1995 and 1996, at which time it was surfaced with decomposed granite and landscaped with trees, rocks and native and drought-tolerant plants. In 1995, the Bradbury City Council approved the project as a park and bicycle trail. In its 1995 grant application for funds to landscape the area, Bradbury described the project as "the realignment and expansion of the existing trail tread, installation of a low-volume irrigation system, the placement of accent fencing and boulders along the recreational trail, and the planting of 130 trees and several species of native and drought tolerant plants." The application further stated: "Currently, Royal Oaks Drive [North] in Bradbury is bordered on the south side by a chain link fence separating a five foot dirt strip from the roadway. This narrow dirt strip is used by pedestrians, equestrians and bicyclists as a link to nearby bicycle and equestrian trails in the City of Duarte. The objectives of the approximately 1.85 acre Royal Oaks Recreational Trail and Landscaping Project are to provide improvements to an existing trail corridor . . . , which is heavily used by the residents of Bradbury, Duarte and neighboring cities. Our intent is to increase the separation between vehicular traffic along Royal Oaks Drive [North] and the recreational trail, thereby improving safety and expanding recreational opportunities to bicyclists, walkers, joggers and equestrians." The application explained the site was selected because "it is located on a trail corridor that is currently used for walking, jogging, biking and horseback riding" and "will provide a useful link between . . . Bradbury and existing bicycle and equestrian trails within . . . Duarte."

As a consequence of the need "[t]o construct a trail wide enough to permit the full recreational use," Bradbury obtained permission from Duarte to place its fence several feet on the Duarte side of the border. The 1996 "Indemnity and

3

Maintenance Agreement" between Bradbury and Duarte provided: "Bradbury intends to develop the multipurpose Royal Oaks Trail (the 'Trail') along the boundary between the two cities. The Trail will be a multipurpose public pathway constructed for purposes of promoting bicycle, equestrian, pedestrian and recreational access for all persons within the surrounding community." In exchange for Duarte's permission to utilize a portion of its land, Bradbury agreed "at its sole cost and expense, to construct the Trail in accordance with the [attached] plans . . . , and after construction to maintain the improvements and landscaping comprising all of the Trail, including the Duarte Property."

Two witnesses stated in declarations and in deposition testimony that the pathway was used for horseback riding and hiking, and as an access route to other recreational trails located nearby, specifically horse trails in Duarte used by Bradbury residents.[3] Pictures of the area showed a sign located on the north side of Royal Oaks Drive North depicting a person riding a horse and indicating a horse crossing.[4]

In her opposition and counterstatement of facts, Montenegro disputed that the pathway on which she fell was a recreational trail. She contended that Bradbury had so denominated the area only to obtain funding for the landscaping project. She submitted photographs of the area and contended that the

---

[3]    In her deposition, Montenegro acknowledged having seen horses and riders using the pathway. At oral argument, it was represented that she subsequently changed her testimony to state that the horses she had seen were not on the pathway. There was no citation to the record to support this representation, which does not, in any event, affect the outcome. Other evidence established that the trail was used for horseback riding, hiking and as an access route to Duarte's trails.

[4]    Much of Bradbury is zoned for horses and/or agriculture. The parties did not dispute the existence of a recreational trail used by hikers, bikers and equestrians on the Duarte side of the border fence. A sign on the Duarte side, near where the "Bradbury Trail" commences, states: "This recreation area is a multi-use facility for bicycles, equestrians, pedestrians."

photographs, as well as certain evidence submitted by Bradbury, established that the area was essentially a sidewalk, built along Royal Oaks Drive North for pedestrian safety.[5] She pointed particularly to the facts that it ran alongside a street, was elevated by a curb, provided pedestrians a place to walk out of the street, was in a residential area, was not in a natural condition, and was maintained by a landscaping company on a weekly basis.

The court granted summary judgment. At the hearing, the court noted that the Bradbury City Council had designated the pathway as a trail and that it had been treated as a trail. In its order, the court stated that the undisputed facts established that "the pathway where [Montenegro] fell [was] part of a recreational trail, specifically the Royal Oaks Recreational Trail and Landscaping Project," and that it was "designed and used for horseback riding and hiking and as access to other recreational areas." Judgment was entered and this appeal followed.

## DISCUSSION

A. *Standard of Review*

A defendant moving for summary judgment "bears the burden of persuasion that there is no triable issue of material fact and that [the defendant] is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) To meet this burden, the defendant must show that one or more elements of the causes of action cannot be established, or that there is a complete defense to each cause of action. (*Ibid.*) "[A]fter a motion for summary judgment

---

[5]  Carl Nelson, a civil engineer, had stated in a declaration submitted in support of the motion that one of the purposes for enlarging, landscaping and surfacing the area was to "afford[] trail users a pathway safer than previously sharing the paved roadway with vehicular traffic along Royal Oaks Drive North" and that the area "offers a substantial safety improvement to trail users and reduces conflicts with vehicular traffic on Royal Oaks Drive North."

5

has been granted [by a trial court], [an appellate court] review[s] the record de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained. [Citation.]" (*Guz v. Bechtel National, Inc*. (2000) 24 Cal.4th 317, 334.)

B. *Governmental Immunity for Recreational Trails*

A public entity is generally liable for an injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury and the public entity had actual or constructive notice of the dangerous condition. (§§ 835, 835.2; *Metcalf v. County of San Joaquin* (2008) 42 Cal.4th 1121, 1126.) Section 831.4, however, precludes governmental liability for injuries caused by the condition of "(a) Any unpaved road which provides access to fishing, hunting, camping, hiking, riding, including animal and all types of vehicular riding, water sports, recreational or scenic areas" or "(b) Any trail used for the above purposes," referring to the purposes listed in subdivision (a).[6]

Montenegro's claim against Bradbury is predicated on her allegation that the area where she fell was maintained in a dangerous condition due to physical defects -- insufficient lighting and a protruding tree trunk. But a governmental entity "is absolutely immune from liability for injuries caused by a physical defect of a [recreational] trail." (*State of California v. Superior Court* (1995) 32 Cal.App.4th 325, 326-329.) Subdivision (b) "gives [governmental entities] absolute immunity from injuries caused by the condition of any trail described in section 831.4." (*Prokop v. City of Los Angeles* (2007) 150 Cal.App.4th 1332,

---

[6] Bradbury maintains that because the trail is not a "road," subdivision (a) of section 831.4 does not apply, but because it is a trail used both for a recreational purpose as well as for access to other recreational areas, subdivision (b) applies.

1337.) The "[a]ny trail used for the above purposes" language of subdivision (b) of section 831.4 "extends immunity to trails used for the described recreational purposes" -- fishing, hunting, camping, hiking, riding, including animal and all types of vehicular riding, water sports, etc. -- and also to trails providing access to those recreational activities. (*Treweek v. City of Napa* (2000) 85 Cal.App.4th 221, 229, 231; accord, *State of California v. Superior Court*, *supra*, at p. 328.)

Montenegro contends that she presented sufficient evidence that the pathway was a sidewalk to raise a triable issue of fact about its nature. She points out that the pathway was only 0.6 miles long, ran entirely along Royal Oaks Drive North, was elevated above the street, was separated from the street by a curb, and seemed to meet the definition of sidewalk in Vehicle Code section 555: "that portion of a highway, other than the roadway, set apart by curbs, barriers, markings or other delineation for pedestrian travel." Although the purpose for which an area is being used "is ordinarily viewed as an issue of fact [citation], it becomes one of law if only one conclusion is possible." (*Giannuzzi v. State of California* (1993) 17 Cal.App.4th 462, 467.) Whether a pathway is a trail or a sidewalk "depends on a number of considerations, including accepted definitions of the property [citations], the purpose for which the property is designed and used, and the purpose of the immunity statute . . . ." (*Amberger-Warren v. City of Piedmont* (2006) 143 Cal.App.4th 1074, 1078-1079; accord, *Farnham v. City of Los Angeles* (1998) 68 Cal.App.4th 1097, 1103 ["design and use" control whether area qualifies as recreational trail].)

The trial court found that Bradbury was entitled to immunity under section 831.4, subdivision (b), because the pathway where Montenegro fell was "designed and used for horseback riding and hiking and as access to other recreational areas." The court's finding was supported by uncontroverted evidence that the pathway was designated by the City Council as a park and recreational trail when it

7

approved construction of the improvements to the site, and that it was designed to be used by joggers, hikers, bicyclists, and equestrians. Indeed, the evidence established that Bradbury had taken steps to ensure the pathway would accommodate the proposed uses by entering into an agreement with Duarte to create enough space on its side of the fence for those activities to comfortably occur. Moreover, uncontroverted evidence established that members of the public regularly used the pathway for at least two of the recreational purposes listed in the statute -- horseback riding and hiking.

Citing Legislative Committee comments made when the statute was originally enacted decades ago, Montenegro contends the pathway does not fall under section 831.4 because it is not in a natural or unimproved state and is located in a residential neighborhood.[7] As explained in *Giannuzzi v. State of California*, when adopted in 1963, "[s]ubdivision (a) [of section 831.4] dealt with 'Any unpaved road which provides access to fishing, hunting or primitive camping, recreational or scenic areas'" and "[s]ubdivision (b) read in its entirety: 'Any hiking, riding, fishing or hunting trail.'" (*Giannuzzi v. State of California, supra*, 17 Cal.App.4th at p. 466, citing Stats. 1963, ch. 1681, § 1, p. 3273 and Stats. 1968,

---

[7] The Legislative Committee comments provide that under section 831.4 and section 831.2, which provides immunity for natural conditions of unimproved property, "the State has an absolute immunity from liability for injuries resulting from natural conditions of a state park area where the only improvements are recreational access roads (as defined in Section 831.4) and hiking, riding, fishing and hunting trails." (Sen. Leg. Com. com., 32 West's Ann. Gov. Code (1995 ed.) § 831.2, p. 328.) The comments further state: "It is desirable to permit the members of the public to use public property in its natural condition and to provide trails for hikers and riders and roads for campers into the primitive regions of the State. But the burden and expense of putting such property in a safe condition and the expense of defending claims for injuries would probably cause many public entities to close such areas to public use. In view of the limited funds available for the acquisition and improvement of property for recreational purposes, it is not unreasonable to expect persons who voluntarily use unimproved public property in its natural condition to assume the risk of injuries arising therefrom as a part of the price to be paid for benefits received." (*Ibid.*)

ch. 714, § 1, p. 1416.)  In 1970, amendments passed which "expanded subdivision (a) to reach 'Any unpaved road which provides access to fishing, hunting, camping, hiking, riding, water sports, recreational or scenic areas,' and reframed subdivision (b) as it presently reads."  (17 Cal.App.4th at p. 466, citing Stats. 1970, ch. 807, § 2, p. 1530.)  In 1972, "subdivision (a) was further broadened by inserting the words 'including animal and all types of vehicular riding.'"  (17 Cal.App.4th at p. 466, citing Stats. 1972, ch. 1200, § 2, p. 2323.)  As a result of these changes, the focus of the statute shifted from "primitive camping, recreational or scenic areas" -- and trails and roads leading to such areas -- to recreational trails of many kinds.  (17 Cal.App.4th at p. 466.)  Courts have since concluded section 831.4 applies to any trail or path specifically put aside and developed for recreational uses, without regard to its unnatural condition or urban location, and have consistently defined paved, multi-purpose paths located in metropolitan areas as "recreational trails" for purposes of section 831.4, subdivision (b) immunity.  (See, e.g., *Amberger-Warren v. City of Piedmont*, *supra*, 143 Cal.App.4th 1074, 1083 [applying definition to paved path in urban dog park]; *Prokop v. City of Los Angeles*, *supra*, 150 Cal.App.4th at p. 1335 [applying definition to bikeway running along Los Angeles River]; *Farnham v. City of Los Angeles*, *supra*, 68 Cal.App.4th at pp.  1099, 1103 [applying definition to Sepulveda Basin Bikeway, paved pathway running along perimeter of Balboa Park in Los Angeles]; *Carroll v. County of Los Angeles* (1997) 60 Cal.App.4th 606, 607-609 [applying definition to South Bay Bicycle Path, running along coast from Santa Monica to Redondo Beach, and used by walkers, joggers, skateboarders, rollerskaters, rollerbladers, and bicyclists].)

The contention that the immunity section 831.4 provides should be limited to unimproved or natural areas was specifically addressed in *Astenius v. State of California* (2005) 126 Cal.App.4th 472, where the subject trail was in an off-road

vehicle recreation area "plan[ed], grad[ed], mapp[ed], mark[ed], inspect[ed] and rat[ed]" by the state. (*Id*. at p. 474.) The court found the plaintiffs' reference to the Legislative Committee's comments to support their contention it should not apply to paths in the planned and improved recreation area "unconvincing" and concluded: "The best place to find legislative intent is in the language of the statute. When the Legislature has intended to limit governmental immunity to unimproved property, it has expressly said so. (See § 831.2 limiting immunity to injuries arising from 'a natural condition of any unimproved public property'.) Section 831.4 contains no such limiting language and we decline to add it." (126 Cal.App.4th at p. 476; accord, *Farnham v. City of Los Angeles*, *supra*, 68 Cal.App.4th at p. 1102 [rejecting plaintiff's contention that "when a governmental entity undertakes to improve or create a paved trail in what is essentially an urban area, it should have the duty to reasonably maintain the condition thereof or face tort liability"]; *Armenio v. County of San Mateo* (1994) 28 Cal.App.4th 413, 417-418 [where plaintiff was injured while riding on paved bicycle path located in San Francisco Watershed, court rejected contention that Legislature intended section 831.4 immunity to apply only to roads or trails providing access to specified recreational activities and to "unimproved property"].)

Montenegro points out that she was not engaged in recreation, but was acting as an ordinary pedestrian seeking to avoid traffic, and contends that many would use the pathway for a similar purpose. The fact that a trail has a dual use -- recreational and non-recreational -- does not undermine section 831.4, subdivision (b) immunity. (*Hartt v. County of Los Angeles* (2011) 197 Cal.App.4th 1391, 1400 [trail used for recreational purposes and as means of access for service and maintenance vehicles]; see *Carroll v. County of Los Angeles*, *supra*, 60 Cal.App.4th at p. 609 [bicycle path used by walkers, joggers, and skaters, as well as bicyclists, constituted "trail" for purposes of section 831.4, subdivision (b)].)

10

Nor does the alleged lack of notice change the result: "Nothing in section 831.4 makes immunity contingent on giving proper warnings." (*Astenius v. State of California*, *supra*, 126 Cal.App.4th at p. 476; accord, *Prokop v. City of Los Angeles*, *supra*, 150 Cal.App.4th at p. 1342.)

As courts have explained, ensuring immunity for dangerous conditions on recreational trails of all kinds "encourage[s] public entities to open their property for public recreational use." (*Armenio v. County of San Mateo*, *supra*, 28 Cal.App.4th at p. 417.) "The actual cost of . . . litigation [over injuries suffered by the multiple recreational users of urban bicycles paths], or even the specter of it, might well cause cities or counties to reconsider allowing the operation of a bicycle path, which, after all, produces no revenue." (*Farnham v. City of Los Angeles*, *supra*, 68 Cal.App.4th at p. 1103.) "'No doubt it is cheaper to build fences and keep the public out than to litigate and pay three, four, five or more judgments each year in perpetuity. But that would deprive the public of access to recreational opportunities. If public entities cannot rely on the immunity for recreational trails, they will close down existing trails and perhaps entire parks where those trails can be found.'" (*Hartt v. County of Los Angeles*, *supra*, 197 Cal.App.4th at p. 1400.) The pathway on which Montenegro was injured was designed to be used by the public for multiple recreational purposes. It was landscaped to simulate a natural area to encourage such activity. Uncontroverted evidence established that it was used for one or more of the listed recreational purposes. The trial court thus correctly concluded that the pathway was a recreational trail.

**DISPOSITION**

The judgment is affirmed.  Bradbury is awarded its costs on appeal.

**CERTIFIED FOR PUBLICATION**


MANELLA, J.


We concur:


WILLHITE, Acting P. J.


SUZUKAWA, J.