Filed 7/9/25  Gibbons v. East Bay Regional Park District CA1/1
Reposting correct version

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| STACY GIBBONS,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>EAST BAY REGIONAL PARK DISTRICT,<br><br>    Defendant and Respondent. | A168543<br><br>(Contra Costa County<br>Super. Ct. No. C21-01910) |

Stacy Gibbons (Gibbons) sued East Bay Regional Park District (the District)[1] following the death of her husband, Grant Wayne Gibbons,[2] from injuries sustained in a bicycling accident.  Grant fell when the front tire of his bicycle lodged in a crack in the surface of a 10-foot-wide, paved service road maintained by the District as part of the Delta de Anza Regional Trail.

The trial court found the District immune from liability for injuries caused by a condition of the trail under Government Code[3] section 831.4, subdivision (b), and sustained its demurrer on that ground.  As Gibbons

---

[1] The District was incorrectly sued as "East Bay Regional Parks Department."

[2] We hereafter refer to Mr. Gibbons by his first name, Grant.  No disrespect is intended.

[3] Undesignated statutory references are to the Government Code.

concedes, the court's ruling is consistent with over 30 years of legal authority unanimously interpreting section 831.4 to provide "trail immunity" to public entities for injuries occurring on paved and unpaved trails. Gibbons asks us to part from this long consensus, arguing this line of authority was wrongly decided. She urges an interpretation of the statute that would limit immunity to liabilities arising out of natural and unimproved conditions, which she claims include *unpaved* pathways and roads but not *paved* trails. This interpretation, she maintains, is necessary to give effect to the Legislature's intent in establishing the Government Claims Act (§ 810 et seq.), of which section 831.4 is part. We disagree, and affirm the judgment.

## I. BACKGROUND

Grant was "an avid and seasoned cyclist." One morning in August 2020, he was cycling with his sister and a friend from Oakley to Concord and back, on a route he had "familiariz[ed] himself with" in advance "to ensure . . . public facilities" the group would "traverse were safe, accessible and regularly utilized by cyclists." "[O]n the return leg of the trip, the group approached Ambrose Park." "Proceeding along the sidewalk north of the park," they reached a "wooden gate affixed with three metal signs." The first "denoted the gate as an entrance to the Delta de Anza tr[ai]l, while the second sign listed . . . rules for trail users. The third and smallest sign read[]: 'Warning Rough Trail.' "

"After passing through the wooden gate, while proceeding in a normal and foreseeable fashion," Grant's "front tire entered and became wedged" in one "among a network of cracks or gaps in the [trail's] surface, throwing him over the handlebars head-first onto the concrete surface." He sustained a traumatic brain injury and lost consciousness. Grant passed away at a hospital 10 days later from resulting complications.

2

The cracks and gaps that caused this fatal accident " 'spider-webb[ed]' out from" an apparent "drainage interface containing a metal grate through the surrounding pavement and slabs of concrete."  Gibbons alleged on information and belief that this was "caused by inadequate support of the pavement by the substrate underneath and surrounding" the service road. Many of the cracks and gaps "measured an inch wide and two or more inches deep, were oriented longitudinally in the direction of travel for users of the paved road," and "were covered and/or filled with loose detritus and debris," concealing them from users of the road, "particularly bicyclists."  Gibbons alleged that the District had notice of the damaged pavement since at least 2011, and staff logbooks reflect it made multiple unsuccessful attempts to repair the cracks and gaps—negligently obscuring them from road users in the process.  After learning of the subject accident, the District's agents chained a traffic barricade to the drainage interface, which prevented bicycle travel over it and warned the public of the concealed dangerous condition.

Gibbons alleged that while the accident "occurred on a property known by many as the 'Delta de Anza Trail,' it is not in fact a 'Trail' at least as that term is understood and defined by Government Code § 831.4."  She acknowledged that the service road was incorporated into the trail in 1999, but described it as part of "a diverse group of separate, paved, planned, previously existing properties . . . cobbled together piece meal into a continuous road" to " 'become part of the [trail].' "  "Prior to their designation as part of the" trail, these segments were designed and used as "roads and a public corridor for the passage of motor vehicles," and they continue to be used as such.

Gibbons filed this action against the District and other public entities in 2021.  The trial court sustained the District's demurrer to her original

3

complaint based on trail immunity and other grounds. Gibbons then filed the operative complaint, asserting claims for dangerous condition of public property and wrongful act or omission of an employee or agent.

The District again demurred and, after a hearing, the trial court sustained the demurrer without leave to amend based solely on trail immunity. In its written order, the court explained that "use controls" the issue of whether property is a trail for purposes of section 831.4, and there was no dispute "that the trail is used for recreational bicycle riding" encompassed by the statute and "such activity is what this case is about." The court cited appellate opinions holding "the nature of the trail's surface is irrelevant," and observed that whether these authorities had incorrectly interpreted the statute as Gibbons claimed "is not for this Court to decide." The court entered judgment in favor of the District.

## II. DISCUSSION

Gibbons asks this court to do what the lower court could not, and part with 30 years of legal authority extending immunity under section 831.4 to paved trails that are used for designated recreational activities. She claims this long-accepted construction of the statute is inconsistent with the Legislature's intent to limit immunity to injuries resulting from natural conditions or unimproved public property, not "substantial works of public improvement" like paved pathways.

### A. *The Statute, Relevant Authorities, and Legal Principles*

#### 1. **Interpretation of the Statute**

Under the Government Claims Act, " 'there is no common law tort liability for public entities in California; instead, such liability must be based on statute.' " (*Nealy v. County of Orange* (2020) 54 Cal.App.5th 594, 601 (*Nealy*).) The Act "comprises ' "a comprehensive statutory scheme that sets

forth the liabilities and immunities of public entities and public employees for torts," ' " and is intended " 'to confine potential governmental liability to rigidly delineated circumstances.' " (*Nealy*, at p. 601.) While the Act generally provides that a public entity is liable for injuries resulting from substantial, known dangerous conditions of its property, this general rule is limited "as provided by statute" (§ 835). (*Nealy*, at pp. 601–602.)

Section 831.4 describes one such limitation. It provides that a public entity is not liable for an injury caused by a condition of "(a) Any unpaved road which provides access to fishing, hunting, camping, hiking, riding, including animal and all types of vehicular riding, water sports, recreational or scenic areas" and "(b) Any trail used for the above purposes." "Immunity under section 831.4 is sometimes referred to as 'trail immunity.' " (*Burgueno v. Regents of University of California* (2015) 243 Cal.App.4th 1052, 1059 (*Burgueno*).)

Starting with *Armenio v. County of San Mateo* (1994) 28 Cal.App.4th 413 (*Armenio*), an unbroken line of authority has defined the scope of trail immunity to include paved trails. As relevant here, *Armenio* "clarified that subdivisions (a) and (b) [of section 831.4] should be read together such that immunity attaches to trails providing access to recreational activities as well as to trails on which those recreational activities take place." (*Lee v. Department of Parks & Recreation* (2019) 38 Cal.App.5th 206, 211 (*Lee*).) *Armenio* further concluded "the 'nature of the trail's surface is irrelevant to questions of immunity' " under section 831.4. (*Lee*, at p. 211; *Armenio*, p. 415 [public entity was not liable for a bicyclist's injuries caused by "improper patching" of a surfaced trail].) After *Armenio*, other courts similarly interpreted the statute to apply to paths "regardless of whether they are paved or unpaved." (*Lee*, at p. 211; see also *Carroll v. County of Los Angeles*

5

(1997) 60 Cal.App.4th 606, 609 (*Carroll*) [rollerblading on a paved bicycle path]; *Farnham v. City of Los Angeles* (1998) 68 Cal.App.4th 1097, 1101 (*Farnham*) [paved bikeway is a " 'trail' " for immunity purposes]; *Prokop v. City of Los Angeles* (2007) 150 Cal.App.4th 1332, 1338–1341 [paved class I bikeway is a " 'trail' " within the meaning of § 831.4].)  Each of these cases considered and rejected claims, like those raised here, that the Legislature never intended or courts wrongly interpreted paved trails to be covered by section 831.4's absolute immunity.

### 2.    Standard of Review

Gibbons's challenge to these authorities raises issues of statutory interpretation that we review de novo.  (*North American Title Co. v. Superior Court* (2024) 17 Cal.5th 155, 169.)  We examine the language of the statute in the context of the whole statutory scheme of which it is part and give it a plain and commonsense meaning, consulting legislative history only where uncertainty persists.  (See *id.* at pp. 169, 180.)  In doing so, we also respect the principle of stare decisis, though we are in no way bound to follow opinions by other District Courts of Appeal.  (*Martinez v. Public Employees' Retirement System* (2019) 33 Cal.App.5th 1156, 1176.)  Stare decisis has " ' "special force in the area of statutory interpretation, " ' " where " ' "the legislative power is implicated, and [the Legislature] remains free to alter what [courts] have done." ' "  (*Tansavatdi v. City of Rancho Palos Verdes* (2023) 14 Cal.5th 639, 666.)

We also review de novo a trial court's ruling on demurrer that the complaint failed to state a cause of action.  (*Churchman v. Bay Area Rapid Transit Dist.* (2019) 39 Cal.App.5th 246, 249.)  We "accept the truth of material facts properly pleaded in the operative complaint, but not contentions, deductions, or conclusions of fact or law." (*Yvanova v. New*

*Century Mortgage Corp.* (2016) 62 Cal.4th 919, 924.) "Specific to the issue in the case before us, we note that '[a]lthough the purpose for which a . . . trail [is] being used is ordinarily viewed as an issue of fact [citation], it becomes one of law if only one conclusion is possible.' " (*Nealy, supra*, 54 Cal.App.5th at p. 600.) Where the complaint reflects that the injured party's "purpose for being" on the subject property "was recreational, and 'he was injured during the course of that activity . . . the application of section 831.4 is established as a matter of law.' " (*Id.* at p. 601.) Here, Gibbons frames her appeal as a "pure question of law" that asks whether the appellate cases finding paved trails covered by section 831.4—relied upon by the trial court—were wrongly decided.

## B.    Analysis

Gibbons contends the Legislature never intended trail immunity to include paved trails.

In construing the meaning of a statute, it is the role of the court " 'to adopt the construction that best gives effect to the Legislature's intended purpose.' " (*Union of Medical Marijuana Patients, Inc. v. City of San Diego* (2019) 7 Cal.5th 1171, 1183.) We follow settled principles in this endeavor. (*Ibid.*) " 'We consider first the words of a statute, as the most reliable indicator of legislative intent.' " (*Id.* at p. 1184.) We give these words " 'their usual and ordinary meaning,' viewed in the context of the statute as a whole," and construe the statute " ' " 'with reference to the whole system of law of which it is a part so that all may be harmonized and have effect.' " ' " (*Ibid.*) "When the language of a statute is ambiguous—that is, when the words of the statute are susceptible to more than one reasonable meaning, given their usual and ordinary meaning and considered in the context of the statute as a whole—we consult other indicia of the Legislature's intent, including such

extrinsic aids as legislative history and public policy." (*Ibid.*) However, if there is no ambiguity, " ' " ' "we presume the Legislature meant what it said and the plain meaning of the statute governs." ' " ' " (*Ibid.*)

We begin our inquiry with the text of section 831.4. By its plain language, subdivision (b) of section 831.4 (hereafter subdivision (b)) applies to "[a]ny trail used for" certain recreational purposes, specifically including "all types of vehicular riding," which includes bicycle riding. (§ 831.4, subd. (a); *Armenio*, *supra*, 28 Cal.App.4th at p. 417.) Use of the determiner "any" before "trail" operates to modify "trail" to mean *all possible trails*. In this way, subdivision (b) need not specify whether a trail must be paved or unpaved for immunity to apply—it applies to "[a]ny trail" so long as the trail is used for the purposes identified in section 831.4, subdivision (a) (hereafter subdivision (a)). (§ 831.4, subd. (b); see *Carroll*, *supra*, 60 Cal.App.4th at p. 609 ["Read in combination with subdivision (a), subdivision (b) gives governmental immunity to '[a]ny trail . . . [¶] . . . which provides access to . . . all types of vehicular riding, water sports, recreational or scenic areas' "].)

Comparing subdivision (b) to the other subdivisions of section 831.4 makes the correctness of this construction clearer. Subdivision (a) concerns "unpaved road[s]" that provide access to recreational activities, and section 831.4, subdivision (c) (hereafter subdivision (c)) applies to "paved trail[s], walkway[s]," etc., located on an easement granted to a public entity that "provides access to any unimproved property." (§ 831.4, subds. (a), (c).) Upon comparison, the Legislature's explicit references to paved and unpaved properties in subdivisions (a) and (c) and the *omission* of such a reference in subdivision (b) are significant. Both the *Carroll* and *Armenio* courts viewed this wording as an indication "the Legislature intended that '. . . the nature of the trail's surface is irrelevant to questions of immunity.' " (*Carroll*, *supra*,

60 Cal.App.4th at p. 609, agreeing with *Armenio*, *supra*, 28 Cal.App.4th at p. 418.) "[S]ubdivision (b)'s reference to '*any trail*' [means] just that, i.e., any trail, whether paved or unpaved." (*Carroll*, at p. 609.) We agree with this construction of section 831.4.

Gibbons, however, asks us to interpret section 831.4 differently and in ways that read words and meaning into the statute the Legislature intentionally left out. She first contends subdivision (b)'s grant of immunity to trails " 'used for the above purposes' " is not merely a reference to the recreational activities enumerated in subdivision (a). She suggests it also includes "subdivision (a)'s 'access to' those enumerated activities and to 'recreational and scenic areas,' " specifically "by means of 'unpaved' facilities." Hence, the word "purposes" in subdivision (b), she argues, should be read as incorporating the unpaved nature of the properties (access roads) described in subdivision (a). We disagree. "The '[a]ny trail used for the above purposes' language of subdivision (b) . . . 'extends immunity to trails used for the described recreational purposes'—fishing, hunting, camping, hiking, riding, including animal and all types of vehicular riding, . . . and also to trails providing access to those recreational activities." (*Montenegro v. City of Bradbury* (2013) 215 Cal.App.4th 924, 929 (*Montenegro*).) "[W]ere the word 'purpose' used in the singular in subdivision (b), i.e., 'above purpose,' it might logically refer to the 'above purpose' of access. However, because it is used in the plural, the word 'purposes' in subdivision (b), more logically refers to the multiple recreational activities of subdivision (a)." (*Armenio*, *supra*, 28 Cal.App.4th at p. 417.) Gibbons's reading of the statute is inconsistent with the plain language of section 831.4.

Gibbons next invites reexamination of section 831.4 within the larger framework of the "dangerous conditions of public property" statutory scheme

9

(§§ 830 to 840.6) and the Government Claims Act (§ 810 et seq.), alleging that existing appellate decisions have failed to correctly harmonize section 831.4 with this framework. More specifically, Gibbons proposes that a review of legislative comments and a comparison of section 831.4 with sections 831.2 and 831.7 "refute any suggestion that the Legislature understood subdivision 831.4(b) to provide absolute immunity for such works of public improvement" as paved trails. Again, we disagree.

When necessary to understand legislative intent, courts may consider "the comments to the [Government] Claims Act which are formally adopted by legislative committees." (*Arroyo v. State of California* (1995) 34 Cal.App.4th 755, 761.) Gibbons perceives support for her position in the legislative comments that accompanied enactment of sections 831.2 and 831.4 in 1963.[4] Comments to section 831.2 explain: "This section provides an absolute immunity from liability for injuries resulting from a natural condition of any unimproved public property. Thus, for example, under this section and Section 831.4, the State has an absolute immunity from liability for injuries resulting from natural conditions of a state park area where the only improvements are recreational access roads (as defined in Section 831.4) and hiking, riding, fishing and hunting trails. [¶] . . . It is desirable to permit the members of the public to use public property in its natural condition and to provide trails for hikers and riders and roads for campers into the primitive regions of the State. But the burden and expense of putting such property in a safe condition and the expense of defending claims for injuries would probably cause many public entites to close such areas to public use.

_____

[4] Section 831.2 states: "Neither a public entity nor a public employee is liable for an injury caused by a natural condition of any unimproved public property, including but not limited to any natural condition of any lake, stream, bay, river or beach."

10

In view of the limited funds available for the acquisition and improvement of property for recreational purposes, it is not unreasonable to expect persons who voluntarily use unimproved public property in its natural condition to assume the risk of injuries arising therefrom as a part of the price to be paid for benefits received." (Sen. Legis. Com. coms., 32 pt. 2 West's Ann. Gov. Code (2012) foll. § 831.2, pp. 65–66.)  These comments have been read to reflect "the breadth of the immunity intended by the enactment of section 831.2." (*Arroyo*, at p. 762.)[5]

Gibbons interprets these legislative comments as proof of the Legislature's intent to permit absolute immunity only for injuries "resulting from a natural condition of any unimproved public property" and excluding paved pathways.  (Italics and underscoring omitted.)  We do not share this interpretation.  The comments, like the original statutory text of section 831.4,[6] never distinguish between paved and unpaved trails.  The reference to "recreational access roads" corresponds to subdivision (a); the reference to trails corresponds to the original version of subdivision (b), which established immunity for injuries caused by a condition of "[*a*]*ny* hiking, riding, fishing or hunting trail." (Stats. 1963, ch. 1681, § 1, p. 3273, italics

---

[5] Legislative comments to section 831.4 reference section 831.2 legislative comments and provide:  "This section will provide, for example, an absolute immunity from liability for injuries resulting from the condition of such roads as fire protection roads in timbered areas and irrigation district maintenance roads."  (Assem. Legis. Com. coms., 32 pt. 2 West's Ann. Gov. Code, *supra*, foll. § 831.4, p. 78.)

[6] The original wording of section 831.4 in 1963 provided:  "Neither a public entity nor a public employee is liable for an injury caused by a condition of: [¶] (a) Any unpaved road which provides access to fishing, hunting or primitive camping, recreational or scenic areas and which is not a [public street or highway]. [¶] (b) Any hiking, riding, fishing or hunting trail." (Stats. 1963, ch. 1681, § 1, p. 3273.)

11

added.) Then, like now, the Legislature's use of the word "any" to define recreational trails is telling. It does not reveal an intent to exclude paved trails from immunity. The comment and the statute's only limitations of the word "trail" concern the nature of recreational activities for which a trail is used. We note, too, that later amendments to section 831.4 to its current form expanded the types of recreational activities encompassed by subdivision (a) and did so without limiting the definition of trails in any other way. (See, e.g., Stats. 1970, ch. 807, § 2, p. 1530 [adding hiking, riding, and water sports to the list of recreational activities receiving immunity] and Stats. 1972, ch. 1200, § 2, p. 2323 [clarifying that "riding" includes animal and all types of vehicular riding].)

Additionally, as the District points out, the comments use the conjunctive "and" to extend absolute immunity to trails used for recreation. The comments assert that "the State has an absolute immunity from liability for injuries resulting from natural conditions of a state park area where the only improvements are recreational access roads . . . *and* . . . riding . . . trails." (Sen. Legis. Com. coms., 32 pt. 2 West's Ann. Gov. Code, *supra*, foll. § 831.2, pp. 65–66, italics added.) This language reveals a legislative intent that is consistent with the subsequent appellate cases Gibbons views as wrongly decided.

The comments likewise make clear that immunity was always meant to apply to "park area[s]" where there are some "improvements" including trails and access roads. (Sen. Legis. Com. coms., 32 pt. 2 West's Ann. Gov. Code, *supra*, foll. § 831.2, p. 65.) The comments expose the Legislature's determination that "[i]t is desirable to permit the members of the public to use public property in its natural condition *and to provide trails for hikers and riders* and roads for campers into the primitive regions of the State." (*Id.*

12

at p. 66, italics added.) These statements about the statute's purpose define trails according to the activities taking place on them. The distinction Gibbons wishes to draw is unsupported by the comments and even the original version of section 831.4. In light of these observations, our analysis aligns us with other courts that have considered and rejected Gibbons's reading of the comments. (See, e.g., *Montenegro, supra,* 215 Cal.App.4th at pp. 930–931; *Astenius v. State of California* (2005) 126 Cal.App.4th 472, 476 (*Astenius*).)

Gibbons also sees the addition of subdivision (c) to section 831.4—a 1979 amendment that introduced the term "paved trails" to the statute—as evidence of an intent to limit absolute immunity to unpaved property.[7] In support of this conclusion, she argues that when subdivision (c) was added, it created a qualified, rather than absolute, immunity for paved trails and thereby recognized public entities should have more responsibility for paved surfaces than for unpaved surfaces. She also points to subdivision (c)'s requirement that hazard warnings "shall only be required where pathways are paved, and such requirement shall not be construed to be a standard of care for any unpaved pathways or roads" as proof the Legislature did not wish this qualified immunity to extend to unpaved and unimproved roads or

_____

[7] Under subdivision (c), immunity extends to "Any paved trail, walkway, path, or sidewalk on an easement of way which has been granted to a public entity, which easement provides access to any unimproved property, so long as such public entity shall reasonably attempt to provide adequate warnings of the existence of any condition of the paved trail, walkway, path, or sidewalk which constitutes a hazard to health or safety. Warnings required by this subdivision shall only be required where pathways are paved, and such requirement shall not be construed to be a standard of care for any unpaved pathways or roads." (§ 831.4, subd. (c).)

13

trails covered by subdivisions (a) and (b). (§ 831.4, subd. (c).) We disagree with the conclusions Gibbons draws from the addition of subdivision (c).

Enacted after subdivisions (a) and (b), subdivision (c) sought to encourage governmental entities to accept easements that provide access to unimproved areas over private property by reducing exposure to tort liability. (*Farnham*, *supra*, 68 Cal.App.4th at p. 1102.) The addition "was not intended to *limit* existing immunity in any way, but rather to *expand* it." (*Amberger-Warren v. City of Piedmont* (2006) 143 Cal.App.4th 1074, 1082, italics added.) As other courts have observed, we also take note that "[t]he Legislature could have easily chosen to make subdivision (b)'s 'any trail' subject to the same warning requirements of subdivision (c) and opted not to do so." (*Farnham*, at p. 1102; *Amberger-Warren*, at p. 1082 ["No intent to limit the meaning of a 'trail' under subdivision (b) is apparent in the enactment of subdivision (c) of section 831.4"].)[8] Based on our own independent analysis, we find these observations convincing.

"The best place to find legislative intent is in the language of the statute." (*Astenius*, *supra*, 126 Cal.App.4th at p. 476.) But Gibbons's construction would require us to ignore the "any trail" language chosen for subdivision (b). "When the Legislature has intended to limit governmental immunity to unimproved property, it has expressly said so. (See § 831.2 limiting immunity to injuries arising from 'a natural condition of any unimproved public property'.)" (*Astenius*, at p. 476.) And as *Astenius* noted

---

[8] *Farnham* considered the legislative history and observed that section 831.4 "went through a variety of drafts as to subdivisions (b) and (c) before its final form. After considerable input from attorneys, cities, and counties, the final draft gave total immunity for *any* trail used for recreational access, and a more limited immunity to paved trails, etc., on an easement that provides access to unimproved property." (*Farnham*, *supra*, 68 Cal.App.4th at pp. 1101–1102.)

(in rejecting a similar argument to that advanced by Gibbons), we are also persuaded that because section 831.4 contains no such limiting language, we will decline to add it. (*Astenius*, at p. 476.)

Lastly, we also disagree with Gibbons's perception of the significance of section 831.7, which she sees as corroborating her view that immunity should not apply to this case. Enacted in 1983, section 831.7 provides immunity to public entities for injuries resulting from "hazardous recreational activit[ies]." (§ 831.7, subd. (a); see Stats. 1983, ch. 863, § 1, pp. 3155–3157.) A " 'hazardous recreational activity' means a recreational activity conducted on property of a public entity that creates a substantial, as distinguished from a minor, trivial, or insignificant, risk of injury to a participant . . . ." (§ 831.7, subd. (b).) Mountain bicycling is identified as one such hazardous activity in subdivision (b)(3) of section 831.7. But, "[*f*]*or the purposes of th*[*at*] *subdivision*, 'mountain bicycling' does not include riding a bicycle on paved pathways . . . ." (§ 831.7, subd. (b)(3), italics added.) Gibbons ignores the above italicized restriction to argue it would be superfluous for the Legislature in 1983 to have specified that "riding a bicycle on paved pathways, roadways, or sidewalks" is not a hazardous recreational activity if public entities already possessed absolute immunity for paved paths and trails under section 831.4. This argument is unconvincing.

Sections 831.4 and 831.7 are dissimilar. Even assuming that the latter provision's definition of "mountain bicycling" does not include bicycling on paved *trails* (which we do not decide), the Legislature's exemption of certain kinds of cycling from one immunity does not show it meant to exempt this activity from a different immunity. There is nothing incongruous about a statute that establishes multiple partially overlapping immunities. (See *Murphy v. Twitter, Inc.* (2021) 60 Cal.App.5th 12, 32 [addressing overlapping

15

immunities in the Communications Decency Act of 1996 (47 U.S.C. § 230)].)
Nor does the overlap here render any part of the Government Claims Act
superfluous. The absolute immunity established by section 831.4 is for
"injury caused by a condition of" a trail; the qualified immunity established
by section 831.7 is for injury arising out of hazardous recreational activities
(*id.*, subd. (a)). Thus, section 831.4 ties immunity to *locations*, while
section 831.7 ties it to *activities*. We see no conflict.

Beyond her push to reinterpret section 831.4's trail immunity, Gibbons
does not claim the trial court erred in finding the injuries giving rise to her
claims were caused by the condition of a trail. The complaint alleged the
Delta de Anza Regional Trail is used for recreational "riding" (§ 831.4,
subds. (a) & (b)) and this is what Grant was doing when he was injured as a
result of the trail's condition. While the complaint at times called the trail a
"service road," this does not change the analysis. (See *Helm v. City of Los
Angeles* (2024) 101 Cal.App.5th 1219, 1231 ["A party's self-serving label" does
not create a disputed issue of fact as to whether property is a trail]; *Lee*,
*supra*, 38 Cal.App.5th at p. 212 [" 'The design and use will control what an
object is, not the name' "].) Nor is it changed by the allegation that the trail
continues to be used as a service road in addition to its use as a trail. (See
*Burgueno*, *supra*, 243 Cal.App.4th at p. 1060 [trail immunity applies despite
trail's use "for both recreational and non-recreational purposes"].) In short,
trail immunity—as long and correctly interpreted by the Courts of Appeal—
directly applies to Gibbons's claims.

### III. DISPOSITION

The judgment is affirmed. The District is entitled to its costs on
appeal. (Cal. Rules of Court, rule 8.278(a)(2).)

SMILEY, J.


WE CONCUR:


HUMES, P. J.

LANGHORNE WILSON, J.


A168543
*Gibbons v. East Bay Regional Park District*


17