Filed 12/11/25  Lee v. City of San Jose CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

`

| | |
|---|---|
| NAYOUNG LEE, | H052534 |
| Plaintiff and Appellant, | (Santa Clara County Super. Ct. No. 21CV381190) |
| v. | |
| CITY OF SAN JOSE, | |
| Defendant and Respondent. | |

Plaintiff Nayoung Lee was injured by two cyclists who ran into her while she was walking on the Lower Guadalupe River Trail Bikeway (a paved portion of the Guadalupe River Trail).  She sued the cyclists and the City of San Jose, which maintains the trail.  Plaintiff appeals from the final judgment entered after the trial court granted summary judgment for the City based on "trail immunity" under Government Code section 831.4, subdivision (b).  For the reasons discussed here, we will affirm the judgment.[1]

## I.        BACKGROUND

The trial court recited the following evidence in its order granting summary judgment, based on the City's separate statement of undisputed material facts.  While walking on a paved portion of the Guadalupe River Trail down the ramp of the Montague Expressway overpass, plaintiff was struck from behind by a cyclist.  The Guadalupe

---

[1]  The trial court also granted summary judgment for the City based on "design immunity" under Government Code section 830.6.  Because we reach our disposition under section 831.4, subdivision (b), we do not address plaintiff's challenge to the design immunity ruling or her subsidiary arguments challenging the denial of her motions for continuance and reconsideration.

River Trail is owned by the Santa Clara Valley Water District and maintained by the City of San Jose. The portion of the trail where plaintiff was injured is called the Guadalupe Trail Bikeway. The Bikeway is a 6.4-mile paved trail adjacent to the Lower Guadalupe River, extending from Interstate 880 to Gold Street in Alviso. It was developed for recreational uses such as walking, running and cycling. The Bikeway supports two-way traffic and is divided by a yellow stripe down the center. Only pedestrians, cyclists and other non-motorized vehicles are permitted on the Bikeway.

Plaintiff commenced a premises liability action against the City, including counts of negligence, willful failure to warn (Civil Code § 846), and dangerous condition of public property. Among its 25 affirmative defenses, the City asserted both trail immunity under Government Code section 831.4, subdivision (b) and design immunity under Government Code section 830.6.

The City moved for summary judgment or summary adjudication based on the absence of a dangerous condition and on the application of design immunity and trail immunity as a matter of law. Plaintiff opposed summary judgment with evidence of a dangerous condition. She also argued there was no design immunity and that trail immunity should not be applied.

Although the trial court found triable issues sufficient to defeat summary judgment as to the existence of a dangerous condition, the court granted summary judgment because the City had established as a matter of law that it was entitled both to design immunity and trail immunity. The court denied plaintiff's motion for reconsideration of the design immunity ruling, and entered judgment in the City's favor.

## II.  DISCUSSION

"On appeal after a motion for summary judgment has been granted, we review the record de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.) A motion for summary judgment "should be

granted if no triable issue exists as to any material fact and the defendant is entitled to a judgment as a matter of law." (*Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1002–1003, citing Code Civ. Proc., § 437c, subd. (c).) In performing our de novo review, we view the evidence in the light most favorable to the non-prevailing party. (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142.) "[W]e liberally construe plaintiffs' evidentiary submissions and strictly scrutinize defendant's own evidence, in order to resolve any evidentiary doubts or ambiguities in plaintiffs' favor." (*Ibid.*)

A defendant moving for summary judgment has the burden to show that a cause of action lacks merit because one or more elements of the cause of action cannot be established or there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subd. (o); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) If the moving party makes a prima facie showing that justifies a judgment in its favor, the burden of production shifts to the opponent to show the existence of a triable issue of material fact. (Code Civ. Proc., § 437c, subd. (o)(2); *Aguilar*, at p. 850.)

## A. TRAIL IMMUNITY UNDER GOVERNMENT CODE SECTION 831.4, SUBDIVISION (B)

Tort liability for public entities in California derives only from statute and not from common law. (*Nealy v. County of Orange* (2020) 54 Cal.App.5th 594, 601.) The Government Claims Act is a comprehensive statutory scheme that describes the liabilities and immunities of public entities and public employees for torts, and is intended to confine potential governmental liability to rigidly delineated circumstances. (*Nealy, at p. 601*.) Although a public entity generally is liable for injuries resulting from substantial, known dangerous conditions of its property, that general rule is limited as provided by statute. (*Id.* at pp. 601–602.) (See Gov. Code, § 835; undesignated statutory references are to this code.)

3

According to section 831.4, subdivision (a), a public entity is not liable for an injury caused by the condition of "[a]ny unpaved road which provides access to fishing, hunting, camping, hiking, riding, including animal and all types of vehicular riding, water sports, recreational or scenic areas," so long as it is not a "(1) city street or highway or (2) county, state or federal highway or (3) public street or highway of a ... district ... formed for the improvement or building of public streets or highways." Subdivision (b) of that section extends immunity to "Any trail used for the above purposes." And subdivision (c) extends qualified immunity to "[a]ny paved trail, walkway, path, or sidewalk on an easement of way which has been granted to a public entity, which easement provides access to any unimproved property."

"[S]ubdivisions (a) and (b) should be read together such that immunity attaches to trails providing access to recreational activities as well as to trails on which those recreational activities take place." (*Lee v. Department of Parks & Recreation* (2019) 38 Cal.App.5th 206, 211.) Together with the immunity provided by section 831.2 for an injury caused by a natural condition of any unimproved public property, section 831.4 affords public entities " 'an absolute immunity from liability for injuries resulting from natural conditions of a [public] park area where the only improvements are recreational access roads (as defined in Section 831.4) and hiking, riding, fishing and hunting trails.' " (*Armenio v. County of San Mateo* (1994) 28 Cal.App.4th 413 (*Armenio*), quoting comments of relevant legislative committees.)

The purpose of trail immunity is to " 'permit the members of the public to use public property in its natural condition and to provide trails for hikers and riders and roads for campers into the primitive regions of the State' " and to "encourage public entities to open their property for public recreational use, because 'the burden and expense of putting such property in a safe condition and the expense of defending claims for injuries would probably cause many public entities to close such areas to public

4

use.' " (*Armenio*, *supra*, 28 Cal.App.4th at p. 417; see also *Loeb v. County of San Diego* (2019) 43 Cal.App.5th 421, 431.)

The nature of a trail's surface has been viewed as irrelevant to the application of immunity. (*Armenio, supra,* 28 Cal.App.4th at p. 418.) Indeed "trail" immunity applies even when the trail is paved. (*Amberger-Warren v. City of Piedmont* (2006) 143 Cal.App.4th 1074, 1078–1079 (*Amberger-Warren*); see also *Farnham v. City of Los Angeles* (1998) 68 Cal.App.4th 1097, 1103 (*Farnham*).) "Section 831.4 applies to any trail or path specifically put aside and developed for recreational uses, without regard to its unnatural condition or urban location and [appellate courts] have consistently defined paved, multi-purpose paths located in metropolitan areas as 'recreational trails' for purposes of section 831.4, subdivision (b) immunity." (*Montenegro v. City of Bradbury* (2013) 215 Cal.App.4th 924, 931; see also *Prokop v. City of Los Angeles* (2007) 150 Cal.App.4th 1332, 1338–1341 [paved class I bikeway is a trail within the meaning of § 831.4; collecting cases]; and *Carroll v. County of Los Angeles* (1997) 60 Cal.App.4th 606, 607, 609–610 [section 831.4 applied to bicycle accident on paved bicycle path].)

Based on the foregoing authorities and undisputed facts, we see no error in the trial court's determination that the City was immune from suit as a matter of law. Plaintiff acknowledges that the trial court's determination comports with existing case law, but she argues the Legislature could not have intended trail immunity to extend to paved trails as no paved trails existed in California when section 831.4, subdivision (b) was amended to its current form. Plaintiff also argues that the statute's original purpose—to permit the public to use public property in its natural condition—is inapplicable to modern paved mixed-use trails built and maintained by government entities and implicating greater public safety concerns.[2]

_____

[2] We deny plaintiff's request for judicial notice of two federal agency reports regarding the use and sales of e-bikes as irrelevant and therefore unnecessary to our

5

Plaintiff's challenge raises an issue of statutory interpretation that we review de novo.  (*North American Title Co. v. Superior Court* (2024) 17 Cal.5th 155, 169 (*North American Title Co.*).)  "The cardinal rule of statutory construction is to ascertain the intent of the Legislature and thus effectuate the purpose of the law."  (*Westerfield v. Superior Court* (2002) 99 Cal.App.4th 994, 997.)  The language of the statute itself is the best indicator of legislative intent.  (*Williams v. Superior Court* (1993) 5 Cal.4th 337, 350.)  We examine the statute's language in the context of the entire statutory scheme of which it is part and give it a plain and commonsense meaning, consulting legislative history only where uncertainty persists.  (See *North American Title Co.*, *supra*, 17 Cal.5th at pp. 169, 180.)

Plaintiff does not contend the statute is ambiguous and she acknowledges the trial court correctly followed thirty years of precedent in ruling that the City enjoyed trail immunity.  Rather, plaintiff contends the analysis in *Armenio* (and every decision following its conclusion that trail immunity encompasses paved trails) rests on the faulty premise that the Legislature intended the words "any trail" in subdivision (b) to apply to paved trails.  Specifically, plaintiff asserts the Legislature could not have intended subdivision (b) to apply to paved trails because when the Legislature added subdivision (b) to section 831.4 in 1963 and amended it in 1970,[3] California had no paved trails.  She contends there were no paved trails in California until 1978 when the California Recreational Trail Plan was enacted, and reasons that "any trail" in

_____

resolution of this appeal.  (See *Jordache v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 748, fn. 6.)

[3]  In 1970, the Legislature amended section 831.4, subdivision (b) from "any hiking, riding, fishing or hunting trail" (Stats. 1963, ch. 1681, p. 3273, § 1) to read "Any trail used for the above purposes."  (Stats. 1970, ch. 807, § 2, p. 1530, amending Gov. Code, § 831.4, § 2.)  Subdivision (c), which refers to "Any paved trail" and concerns easements over private property, was added in 1979.  (Stats. 1979, ch. 1010, § 1, p. 3434; see also *Giannuzzi v. State of California* (1993) 17 Cal.App.4th 462, 466 [discussing section 831.4's legislative history].)

subdivision (b) implicitly but necessarily could only have meant unpaved trails when it was enacted. She disputes a legislative intent to create a category of paved mixed-use trails with absolute government immunity regardless of fault or awareness of dangerous conditions existing on those paved trails.

It is well established that where a statute's language is unambiguous, a court will not consider its legislative history except to confirm the interpretation already apparent from the plain language, and not to discern an alternative meaning. (*Riddick v. City of Malibu*, (2024) 99 Cal.App.5th 956, 970–971.) Because the language of section 831.4 is unambiguous, we neither consider its legislative history nor plaintiff's public policy arguments to depart from its plain meaning.

But even if we were to consider legislative history, we would reject plaintiff's premise that "any trail" implicitly included only unpaved trails until the reference to "paved trails" was added by subdivision (c) in 1979, and the Legislature intended to preserve that implicit meaning. Even if "any trail" implicitly encompassed only unpaved trails until 1979, we would still presume the Legislature recognized the pre-existing inclusive meaning of "any trail" in subdivision (b) when it amended the statute, and likewise intended "any trail" to encompass the addition of "paved trails" in subdivision (c). Two courts interpreting section 831.4 reached a similar conclusion. In *Farnham*, the court observed that "[t]he Legislature could have easily chosen to make subdivision (b)'s 'any trail' subject to the same warning requirements of subdivision (c) and opted not to do so." (*Farnham, supra*, 68 Cal.App.4th at p. 1102.) Similarly, in *Amberger-Warren*, the court found no intent to limit the meaning of a "trail" under subdivision (b) in the enactment of subdivision (c). (*Amberger-Warren*, *supra*, 143 Cal.App.4th at p. 1082.) " 'In the absence of countervailing considerations, we assume that the Legislature "knew what it was saying and meant what it said." ' " (See *Guthman v. Moss* (1984) 150 Cal.App.3d 501, 508–509.)

7

Nor are we persuaded by plaintiff's public policy arguments. "In interpreting statutes, we follow the Legislature's intent, as exhibited by the plain meaning of the actual words of the law, ' " 'whatever may be thought of the wisdom, expediency, or policy of the act.' " ' " (*California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 632.) We acknowledge that a court is not required to follow the plain meaning of a statute when to do so would " 'frustrate[] the manifest purpose of the legislation as a whole or otherwise [lead] to absurd results.' " (*California School Employees Assn. v. Governing Board* (1994) 8 Cal.4th 333, 340; see also, *DaFonte v. Up-Right, Inc.* (1992) 2 Cal.4th 593, 601.) But to " 'justify departing from a literal reading of a clearly worded statute, the results produced must be so unreasonable the Legislature could not have intended them.' " (*Howard Jarvis Taxpayers Assn. v. Coachella Valley Water Dist.* (2025) 108 Cal.App.5th 485, 516.) We do not find the plain meaning of section 831.4, subdivision (b) to be absurd at all, nor so absurd in its results that we may disregard its literal meaning.

Our conclusion also respects the principle of stare decisis, although we are not bound to follow the decisions of other intermediate courts. (*Martinez v. Public Employees' Retirement System* (2019) 33 Cal.App.5th 1156, 1176.) Stare decisis has greater force in the area of statutory interpretation because the legislative power is implicated, and the Legislature remains free to alter what courts have done. (*Tansavatdi v. City of Rancho Palos Verdes* (2023) 14 Cal.5th 639, 666 (*Tansavatdi*).)

**B. THERE IS NO FAILURE TO WARN EXCEPTION TO TRAIL IMMUNITY**

Plaintiff asks us to read a "failure to warn" exception into the trail immunity statute, akin to the exception to design immunity found in section 835, subdivision (b). We reject plaintiff's argument that the decisions in *Tansavatdi* and *Leon v. County of Riverside* (2023) 14 Cal.5th 910 (*Leon*), permit us to do so. The Supreme Court did not create a failure to warn exception to design immunity in *Tansavatdi*. Rather, *Tansavatdi* reaffirmed the court's earlier decision in *Cameron v. State of California* (1972)

7 Cal.3d 318 (*Cameron*), that according to the statute's plain language design immunity under section 830.6 applies to claims alleging that a public entity created a dangerous condition through a defective design under section 835, subdivision (a), but not to claims alleging that a public entity failed to warn of a design element that resulted in a known dangerous condition under section 835, subdivision (b). (*Tansavatdi*, *supra*, 14 Cal.5th at p. 647.)

Tansavatdi elaborates that the holding in *Cameron* derived largely from the analysis in *Flournoy v. State of California* (1969) 275 Cal.App.2d 806, which explained that "the distinct theories of liability set forth in section 835 subdivisions (a) and (b) reflected the common law principle that a single defendant may produce 'two concurring, proximate causes of an accident[:] … an affirmatively negligent act and … a passively negligent omission.' " (*Tansavatdi*, *supra*, 14 Cal.5th at p. 655.) *Flourney* concluded that under the comprehensive statutory scheme, " '[r]egardless of the availability of the active negligence theory, plaintiffs were entitled to go before a jury on the passive negligence theory, i.e., an accident caused by the state's failure to warn the public against icy danger known to it but not apparent to a reasonably careful highway user.' " (*Tansavatdi*, at p. 655.)  The statute itself limited the application of design immunity, and *Tansavatdi* simply reaffirmed the interpretation in *Cameron* of the statute's plain language.  Nor did the Supreme Court create an exception to section 821.6 (which immunizes public employees from claims of injury caused by wrongful prosecution) in *Leon*.  Rather, the court noted that several appellate courts had incorrectly extended immunity to claims for injuries caused by official conduct other than the initiation or prosecution of a proceeding. (*Leon*, *supra*, 14 Cal.5th at pp. 920–921.)

Plaintiff cites *Gonzales v. City of San Diego* (1982) 130 Cal.App.3d 882, 885–886 as an example of an appellate court creating an exception to section 831.2, which confers an absolute immunity on public entities and employees for injuries caused by natural conditions on unimproved public property.  But the *Gonzales* court did not purport to

9

create an exception in the statute; it ruled that the statute did not apply where the city had voluntarily provided (purportedly negligent) lifeguard service at the beach where the plaintiffs' mother had drowned. (*Ibid.*) The court ruled that a public entity that voluntarily assumes a protective function and induces public reliance will be held to the same standard of care as a private individual or entity under similar circumstances. (*Id.* at p. 887.) We do not view the mere paving of a trail as comparable to affirmatively undertaking a protective activity such as providing lifeguard service.

The trail immunity statute contains plain language that every appellate court has uniformly interpreted since *Armenio* to apply immunity to paved trails. We see no reason here to depart from that precedent. It is not our function to add language or infer exceptions in statutes crafted by the Legislature. (*People v. Atlas* (1998) 64 Cal.App.4th 523, 527.) If a statute is to provide an exception, the job is for the Legislature, not the courts, to define it. (*Dodge v. Superior Court* (2000) 77 Cal.App.4th 513, 524.)

### III.    DISPOSITION

The judgment is affirmed. As the prevailing party, the City of San Jose is awarded its costs on appeal. (Cal. Rules of Court, rule 8.278(a).)

_____

Grover, Acting P. J.

**WE CONCUR:**

_____

Lie, J.

_____

Wilson, J.

H052534
*Lee v. City of San Jose*